Filed 12/17/14  Van Halen v. Berkeley Hall School Foundation CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| KELLY VAN HALEN etc., et al., | B252059 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC490347) |
| v. | |
| BERKELEY HALL SCHOOL FOUNDATION, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Reversed and remanded with directions.

Mastroianni Law Firm and A. Douglas Mastroianni for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, Marjorie Ehrich Lewis, Daniel L. Weiss and Bradley J. Hamburger for Defendants and Respondents.

_____

# INTRODUCTION

Parents enrolled their daughter in a private school for preschool. Two years later, while still attending the school, the child developed a severe allergy to nuts that can cause a serious and potentially lethal reaction. The school promised to create an educational environment that would not expose the child to nuts or nut products and to train its teachers how to administer appropriate aid if the child suffered an allergic reaction. The parents claim that the school had no intention of honoring its promises and in fact did not. Concerned about their child's safety, the parents, when they learned the truth, withdrew their daughter from the school and sued for return of their tuition, damages, and emotional distress. The trial court dismissed most of the parents' complaint on the pleadings. We reverse most of the trial court's rulings.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *The First Amended Complaint*

We assume these allegations are true:[1]

Stella Rogers, the daughter of Kelly Van Halen and Baron Rogers, is "a minor school-age child with a severe nut allergy" who can "suffer anaphylaxis or anaphylactic shock if exposed to nuts." Her parents "carry a portable dose of adrenaline (epinephrine) which can be injected in the event of an allergic reaction. This portable dose of epinephrine — commonly known by the trademarks 'EpiPen' or 'Twinject'— is now a standard feature in American schools as the incidence of severe nut allergies rises."

---

[1] See *Century-National Ins. Co. v. Garcia* (2011) 51 Cal.4th 564, 566, footnote 1 ["[a] demurrer must assume the truth of a complaint's properly pleaded allegations"]; *Leyte-Vidal v. Semel* (2013) 220 Cal.App.4th 1001, 1007 ["""[i]t is not the ordinary function of a demurrer to test the truth of the plaintiff's allegations or the accuracy with which he describes the defendant's conduct""""].

Van Halen and Rogers enrolled Stella in the Berkeley Hall School, a private school in Los Angeles operated by defendant Berkeley Hall Foundation, Inc. Defendant Natalie Miller was "a top administrator at the school" and defendant Winnie Needham was an employee of the school.

Van Halen and Rogers contacted Miller "to learn about procedures in place to protect children with severe nut allergies." After Miller initially refused to meet with them, they met with Stella's teacher and the director of the preschool, where they learned that school employees "would *never* administer a dose of adrenaline to Stella," even if it were "necessary to save her life in response to a severe allergic reaction," and that the school would not ask students to refrain from bringing nut products to school. The teachers and staff made comments to the effect "Stella's allergy had no physical cause and was merely 'in her head' and she would grow out of it."

Van Halen and Rogers eventually met with Miller and Craig Barrows, the headmaster of the school, who informed them that "Berkeley Hall had adopted policies to ensure the safety of students with severe nut allergies."[2] The school subsequently sent out two letters to parents asking them not to send nuts and nut products to school. In reliance on the "repeated assurances that the school had banned nut products," Van Halen and Rogers enrolled Stella for the following academic year, "paid tuition of approximately $13,000 under a program that allowed for a full tuition refund if the student withdrew from the school for any reason," and did not "take steps to enroll Stella in another school."

Van Halen and Rogers subsequently "discovered that Berkeley Hall is an institution founded and controlled by Christian Scientists who are opposed on religious grounds to medical intervention to treat illness and advocate instead a spiritual or prayer-based 'faith healing,'" which the school "fails to disclose to parents of prospective

---

[2] Van Halen and Rogers subsequently learned that "shortly after adopting the policy banning nut products at the school, Barrows was terminated as Headmaster and forced to leave the school."

3

students . . . ." Thus, according to Van Halen and Rogers, "children attending the school, who might suffer life threatening injuries while under the school's supervision, are actually under the direct care of Christian Scientists who are likely, based on their religious beliefs, to forego medical intervention to aid an injured or sick child." Berkeley Hall's "failure to acknowledge childhood nut allergies and train its teachers and staff to respond to them, puts the school far outside the acceptable norm and standard of care long ago adopted by responsible and caring educational institutions."

With respect to Stella's situation, Berkeley Hall "refused to enforce its own ban on nut products, refused to train its staff in the use of the 'Epi-Pen,' (after agreeing to do so) and even refused to hire a nurse to care for students in the event of a medical emergency." Despite the school's "repeated assurances that a ban on nut products was being enforced, the school and its teachers and staff refused to do anything to prevent students with nut allergies from being exposed to nut products on campus. This reflected the religious belief of the teachers and staff at Berkeley Hall that Stella's allergies, and the allergies of other students, were not actually caused by nuts and had no actual physical cause—but were instead ailments to be cured with 'faith healing' and prayer." Thus, the school "had no intention of enforcing the nut ban expressly relied on by the plaintiffs in re-enrolling Stella at Berkeley Hall." Moreover, after assuring Van Halen and Rogers that Berkeley Hall staff "would be shown how to use a portable epinephrine injection device," the school informed them "that it could do nothing to intervene medically to help Stella except to call 911 and request paramedic assistance." According to Van Halen and Rogers, "[t]his was consistent with the staff's Christian Science beliefs which [Berkeley Hall] attempts to conceal from the public since deciding to expand its enrollment and revenue base among non-Christian Scientist families who do not reject modern medical science."

Van Halen and Rogers "suffered severe emotional distress worrying about Stella's health [upon] realizing that [Berkeley Hall] and its teachers and staff lied to [them] about their intentions to avoid exposing Stella to nuts, and realizing that the purported nut ban was not in place . . . ." They also suffered severe emotional distress when they learned

4

that Berkeley Hall "would do little or nothing to protect Stella in the event of a medical emergency and Berkeley Hall's own teachers and staff would ignore the purported ban and would themselves repeatedly expose Stella to nut products after promising not to do so."

"Fearing for Stella's safety" and feeling "betrayed" by the school, and because Berkeley Hall "breached repeated promises that it would enforce its nut ban," Van Halen and Rogers "withdrew Stella from the school and were entitled to a full refund of their tuition payment." Berkeley Hall, after acknowledging that Van Halen and Rogers had a "right to a return of the tuition payment," refused to give them a refund unless they "signed a release of all claims and a confidentiality and non-disparagement agreement." In addition, because Van Halen and Rogers had to withdraw Stella from Berkeley Hall "after the start of the school year, they were unable to place their child in another school and educated her through the use of private tutors for a year at a significant cost exceeding $25,000."

In their first cause of action for breach of contract Van Halen and Rogers alleged that Berkeley Hall breached a written agreement "by failing to create a nut-free environment, repeatedly exposing Stella to nuts despite the purported ban, failing to instruct its staff in the use of the Epi-Pen and refusing to return [their] tuition payment." In their second cause of action for fraud they alleged that Berkeley Hall misrepresented that "it would institute a nut-free environment" at the school and would train "its staff in the use of the Epi-Pen." They also alleged that Berkeley Hall "failed to disclose the fact that its staff adhered to Christian Science doctrine which, at best, discouraged the staff from seeking medical intervention for injured or ill students and encouraged a disbelief in the physical causes of allergies . . . ." Van Halen and Rogers also asserted causes of action for intentional infliction of emotional distress, negligent misrepresentation, negligent infliction of emotional distress, negligence, and unfair business practices.

5

B.     *The Demurrer to the First Amended Complaint*

Berkeley Hall demurred to the first amended complaint,[3] arguing that the first cause of action for breach of contract was uncertain and "so imprecise and confusing that Berkeley Hall cannot ascertain the contract that it purportedly breached."  Berkeley Hall also argued that Van Halen and Rogers had not pleaded the second cause of action for fraud with sufficient specificity, nor had they adequately alleged that Berkeley Hall employees had made knowing and intentional false statements.

Berkeley Hall demurred to the cause of action for intentional infliction of emotional distress on the grounds that Van Halen and Rogers had not pleaded outrageous conduct, intent, or severe emotional distress.  Berkeley Hall argued that the negligent misrepresentation cause of action did not state a claim because the alleged statements that the school would institute a nut-free environment and would instruct staff how to use the Epi-Pen were "nonactionable assertions regarding uncertain future events," not statements about "'past or existing material facts.'"  Berkeley Hall argued that the negligent infliction of emotional distress failed because Van Halen and Rogers did not state a claim as "'bystanders'" or as "'direct victims,'" and that their negligence claim failed because they did "not allege that they were harmed by [Berkeley Hall's] conduct."  Finally, Berkeley Hall argued that Van Halen and Rogers did not state a claim under Business and Professions Code section 17200 because they did not allege an unfair business practice and they lacked standing.

On March 29, 2013 the trial court overruled the demurrer to the first cause of action for breach of contract, sustained the demurrer to the second cause of action for fraud with leave to amend, and sustained the demurrer to all of the other causes of action without leave to amend.  The court's order states: "Demurrer is overruled as to the 1st

---

**3**     Van Halen and Rogers amended once as a matter of right pursuant to Code of Civil Procedure section 472.  (See *People ex rel. Strathmann v. Acacia Research Corp.* (2012) 210 Cal.App.4th 487, 505 ["Code of Civil Procedure section 472 grants a plaintiff the right to file an amended complaint in response to a demurrer at any time before the hearing on the demurrer"].)

6

cause of action, sustained with 20 days leave to amend[] as to the 2nd cause of action as it is insufficient, and sustained without leave to amend as to the 3rd-7th causes of action as no harm proximately caused by the defendants['] acts."

### C.   *The Second Amended Complaint*

Van Halen and Rogers filed a second amended complaint with two causes of action, breach of contract and fraud.  To their fraud cause of action, Van Halen and Rogers added specific examples of alleged misrepresentations.   For example, they alleged that on December 1, 2009 Barrows and Barbari DeNisi, the Director of the Early Child Development Center, "made the following intentional and knowing misrepresentations to [Van Halen and Rogers]:  (A) that [Berkeley Hall] would do 'all we can to protect children from exposure to nuts at the school'; (B) that [Berkeley Hall's] staff 'was sensitive to nut allergy issues'; (C) that [Berkeley Hall] will check for nuts items [*sic*] provided by the school for snacks; and (D) 'lunch tables are cleaned after use.'"  Van Halen and Rogers attached a December 1, 2009 letter from Barrows and DeNisi to parents of the Early Child Development Center containing these statements.  In addition, "[o]n February 19, 2010 De[N]isi and Barrows made additional knowingly and intentionally false representations," including that "(A) a ban was implemented for certain enumerated foods containing nuts; and [(B)] that [Berkeley Hall] would dispense [*sic*] of certain enumerated foods containing nuts if found on campus."  Van Halen and Rogers attached a February 19, 2010 email to parents of the school containing these statements.  Barrows, DeNisi and other Berkeley Hall representatives also made similar representations "in a face to face meeting which occurred in November, 2009."  All of these representations "were knowingly false and were intended to defraud" or were made "recklessly and without regard for their truth."

### D.   *The Demurrer to the Second Amended Complaint*

Berkeley Hall demurred again to the fraud cause of action "on multiple, independent grounds."  Berkeley Hall argued that the economic loss rule barred Van

Halen and Rogers' fraud claim because it was "identical" to the their breach of contract claim and "*based on the exact same statements that [they] allege constitute the contractual terms . . . .*" Berkeley Hall argued that "the same alleged broken promises at issue in the breach of contract claim also constitute the false representations allegedly made by [Berkeley Hall] in support of [the] fraud claim":  Berkley Hall stated it would institute a nut-free environment, do everything it could to protect children from exposure to nuts, implement a ban on nut foods, dispose of foods containing nuts if found on campus, and train staff to use the Epi-Pen.  Berkeley Hall also argued that the allegations of knowing and intentional misrepresentations were too conclusory and did not allege anything other than mere nonperformance of contractual promises.  Finally, Berkeley Hall argued that Van Halen and Rogers' fraudulent concealment claim was disproved by their application for admission to the school, of which Berkeley Hall asked the court to take judicial notice, and which Berkeley Hall argued made a full disclosure of the Christian Scientist philosophy of the school.  Van Halen and Rogers opposed both the demurrer and the request for judicial notice.

The trial court held the hearing on the demurrer to the second amended complaint on July 19, 2013.  Counsel for Van Halen and Rogers did not appear.  The court sustained the demurrer without leave to amend.  The trial court's order does not state any reasons for its ruling, and there was no court reporter present at the hearing.

On August 6, 2013 Berkeley Hall filed its answer to the second amended complaint.  On August 20, 2013 Van Halen and Rogers filed a request to dismiss with prejudice the only remaining cause of action, the first cause of action for breach of contract.  The clerk entered the dismissal as requested.  On August 23, 2013 the court entered an order dismissing the complaint.  The August 23, 2013 order states:  "Any part of the complaint, including but not limited to doe defendants, not already dismissed by the plaintiff or via pleading motion is ordered dismissed this date without prejudice."

On October 15, 2013 Van Halen and Rogers filed a notice of appeal stating that they were appealing from the March 29, 2013 and July 19, 2013 orders.  They also filed a notice to proceed by appendix in lieu of a clerk's transcript and a notice to proceed

8

without a reporter's transcript (presumably because the proceedings were not reported and there is no reporter's transcript).

## DISCUSSION

A.      *Standard of Review*

"On appeal from an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law.  [Citation.]  We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law.  We also consider matters which may be judicially noticed.  Further we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]" (*Gong v. City of Rosemead* (2014) 226 Cal.App.4th 363, 370.)  "If the complaint states any possible legal theory, the trial court's order sustaining the demurrer must be reversed. [Citation.]  Also, 'if there is a reasonable possibility the defect in the complaint could be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend.'  [Citation.]  Whether a plaintiff will be able to prove its allegations is not relevant.  [Citation.]"  (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1057.)

B.      *This Court Has Jurisdiction To Hear the Appeal by Van Halen and Rogers.*

Citing *Gutkin v. University of Southern California* (2002) 101 Cal.App.4th 967 (*Gutkin*), Berkeley Hall argues that this court lacks jurisdiction because Van Halen and Rogers filed a notice of appeal after voluntarily dismissing the action, and a voluntary dismissal is not appealable.  Van Halen and Rogers, who did not file a reply brief, do not address this issue.

In some circumstances, "a voluntary dismissal under Code of Civil Procedure section 581 is not appealable."  (*Gutkin*, *supra*, 101 Cal.App.4th at p. 975, fn. omitted;

9

see *Sababria v. Embrey* (2001) 92 Cal.App.4th 422, 426 ["[a] voluntary dismissal is not generally appealable"].)  Van Halen and Rogers, however, are not appealing from a voluntary dismissal.  They are essentially appealing from the trial court's August 23, 2013 order dismissing the complaint after the March 29, 2013 and July 19, 2013 orders sustaining demurrers without leave to amend.  Although counsel for Van Halen and Rogers checked the wrong box on the notice of appeal ("Other . . . : Orders sustaining demurrers without leave [to amend] after voluntary dismissal with prejudice of remaining [causes of action]"), counsel checked the right box on the civil case information statement ("[j]udgment of dismissal after an order sustaining a demurrer") and attached a copy of the August 23, 2013 order of dismissal.  We liberally construe the notice of appeal (Cal. Rules of Court, rule 8.100(a)(2); see *Etheridge v. Reins Internat. California, Inc.* (2009) 172 Cal.App.4th 908, 913, fn. 7 ["'notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced'"]) to overlook the error in checking the wrong box and to include an appeal from the August 23, 2013 order of dismissal (see *Topa Ins. Co. v. Fireman's Fund Ins. Companies* (1995) 39 Cal.App.4th 1331, 1336 [order dismissing complaint without prejudice is appealable if it disposes of all claims and issues in the action]).

Moreover, even if the trial court had not dismissed the complaint after the demurrer orders, the decision in *Gutkin* stands for the opposite proposition from the one asserted by Berkeley Hall.  In *Gutkin* the defendant demurred to five of the seven causes of action alleged against it.  The trial court sustained the demurrer to all five of the causes of action without leave to amend, so that only two causes of action remained.  The plaintiff then filed a voluntary dismissal of his complaint without prejudice, thus dismissing the remaining two causes of action.  Between the order sustaining the demurrer to the five causes of action and the voluntary dismissal of the remaining two causes of action, the trial court had issued some discovery orders, which the *Gutkin* court referred to as "interim orders."  The plaintiff then "twice sought entry of judgment of dismissal on the basis of the trial court's orders sustaining the demurrers to five of the

10

seven causes of action . . . as well as his own voluntary dismissal of the action," but "[t]he court clerk rejected [the plaintiff's] proposed judgment of dismissal because a dismissal of the complaint had been entered and notice of dismissal given." (*Gutkin*, *supra*, 101 Cal.App.4th at p. 973.)

The court in *Gutkin* held that the plaintiff could challenge on appeal the order sustaining the defendant's demurrers to the five causes of action without leave to amend, but not any of the interim orders relating to the two voluntarily dismissed causes of action. The court explained: "[The plaintiff] correctly observes that after the trial court sustained [the defendants'] demurrer to five of his seven causes of action without leave to amend, 'the plaintiff's power to voluntarily dismiss those five causes of action was terminated.' Those counts had been effectively 'tried' by the court, and a voluntary dismissal cannot be taken after 'trial' commences. [Citation.] [The plaintiff] further contends that even though the trial court refused to enter judgment following his voluntary dismissal of the complaint, the court's order sustaining the demurrers without leave to amend, combined with the dismissal of the action, had the legal effect of a final, appealable judgment. We agree." (*Gutkin*, *supra*, 101 Cal.App.4th at p. 974.)[4] The court held, however, that the plaintiff could not appeal from the interim orders relating to the voluntarily dismissed causes of action. The court explained that "the voluntary dismissal could not have the legal effect of a final judgment, and could not serve to expedite an appeal," and therefore by dismissing the remaining claims without prejudice the plaintiff "lost his ability to challenge the trial court's interim orders." (*Id*. at p. 975.)

---

**4** The court noted that "'many courts have allowed appeals by plaintiffs who dismissed their complaints after an adverse ruling by the trial court, on the theory the dismissals were not really voluntary, but only done to expedite an appeal.' [Citations.]" (*Gutkin*, *supra*, 101 Cal.App.4th at pp. 974-975; accord, *Austin v. Valverde* (2012) 211 Cal.App.4th 546, 551; *Ashland Chemical Co. v. Provence* (1982) 129 Cal.App.3d 790, 793; see *Denney v. Lawrence* (1994) 22 Cal.App.4th 927, 930, fn. 1 ["when a dismissal was requested after an adverse trial court ruling so that an appeal could be taken promptly, and operates as a request for an entry of judgment based on the adverse ruling, an appeal will lie"].)

11

Here, Van Halen and Rogers do not challenge on appeal any of the orders relating to the cause of action they voluntarily dismissed with prejudice, the first cause of action for breach of contract. Like the plaintiff in *Gutkin*, Van Halen and Rogers challenge only the trial court's orders sustaining Berkeley Hall's demurrer without leave to amend to their second through seventh causes of action. These are precisely the orders that under *Gutkin* Van Halen and Rogers can challenge on appeal. (See *Gutkin*, *supra*, 101 Cal.App.4th at pp. 974-975; cf. *Goldbaum v. Regents of University of California* (2011) 191 Cal.App.4th 703, 708 [trial court's denial of the plaintiff's motion for statutory attorneys' fees and costs after settlement "and later dismissal of the action *with prejudice* have the legal effect of a final, appealable judgment, which encompasses the ruling on his motion for fees"].)[5]

C.     *The Trial Court Erred in Sustaining Berkeley Hall's Demurrer to the Fraud Cause of Action Without Leave To Amend.*

The trial court's minute order sustaining Berkeley Hall's demurrer to the fraud cause of action in the second amended complaint does not give any reasons for the court's ruling. The court's order sustaining the demurrer to the fraud cause of action in the first amended complaint with leave to amend states only that the cause of action "is

---

[5]     It is true, as Berkeley Hall points out, that there is no direct evidence in the record that Van Halen and Rogers were trying to expedite their appeal. For example, in *Ashland Chemical Co. v. Provence*, *supra*, 129 Cal.App.3d 790 the plaintiff "asked the clerk to dismiss the complaint with prejudice 'only for the *purpose* of expediting appeal and in no way [indicating] agreement or acquiesence [*sic*] with the Court's ruling.'" (*Id.* at p. 792, italics added.) The cases, however, do not require an express affirmative representation that the plaintiff is dismissing the remaining causes of action in order to expedite the appeal, and the plaintiff in *Gutkin* made no such representation. And, like Van Halen and Rogers, the plaintiff in *Gutkin* faced pending discovery motions and requests for sanctions when he voluntarily dismissed his remaining claims, and the court in *Gutkin* did not infer from the pendency of those motions, as Berkeley Hall argues here, that Van Halen and Rogers filed the request for dismissal to avoid imposition of monetary sanctions rather than to expedite the appeal.

12

insufficient." Berkeley Hall asserts that "the trial court elaborated on its reasons for granting [*sic*] [the] demurrers at the hearings, but [Van Halen and Rogers] did not hire a court reporter to document those proceedings." It does not seem fair to fault Van Halen and Rogers for the trial court's decision to state its reasons orally in the absence of a court reporter.[6] (See *Maxwell v. Dolezal* (2014) 231 Cal.App.4th 93, 100 [noting "the due process implications of a proceeding in which the court, aware that no record will be made, incorporates within its ruling reasons that are not documented for the litigants or the reviewing court"].) In any event, the issues on appeal are whether the complaint states a cause of action under any possible legal theory, and whether there is a reasonable possibility any defects in the complaint can be cured by amendment. (*Chavez v. Indymac Mortgage Services*, *supra*, 219 Cal.App.4th at p. 1057.)

Van Halen and Rogers did allege, with sufficient particularity, all of the elements of a cause of action for fraudulent misrepresentation. "The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 990; see *Collins v. eMachines, Inc.* (2011) 202 Cal.App.4th 249, 259.) Van Halen and Rogers alleged that Berkeley Hall and its senior staff intentionally and knowingly misrepresented that the school would create a nut-free environment and train its staff on how to use the Epi-Pen. They specifically alleged the dates, speakers, recipients, methods, and means of the representation for each statement. They also alleged the concealment of material facts: that Berkeley Hall "adhered to Christian Science doctrine" and "discouraged the staff from seeking medical intervention for injured or ill students and encouraged a disbelief in the physical causes of allergies," and that "providing emergency care to students during the school day [is] something contrary to the religious beliefs of every teacher and staff member at the school."

---

[6] It is fair, however, to fault counsel for Van Halen and Rogers for not appearing at the hearing.

Berkeley Hall acknowledges that Van Halen and Rogers alleged that the representations "were knowingly false and were intended to defraud," but argues that Van Halen and Rogers did not allege any "*specific factual allegations*" regarding Berkeley Hall's knowledge and intent. Van Halen and Rogers, however, did allege specifics. They alleged that Berkeley Hall knew that these representations were false because they were inconsistent with the school's Christian Science beliefs, and that the misrepresentations were intentional because they were part of an effort "to expand its enrollment and revenue base among non-Christian Science families who do not reject modern medical science."

More significantly, Berkeley Hall argues that Van Halen and Rogers did not state a claim for fraudulent misrepresentation because they did not allege anything other than nonperformance of contractual promises. In order to state a cause of action for promissory fraud based on a failure to perform contractual obligations, "'something more than nonperformance is required to prove the defendant's intent not to perform his promise.' [Citations.]" (*Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18, 30.) For example, fraudulent intent may be inferred "from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform. [Citation.] However, if plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury." (*Id.* at pp. 30-31; see *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1183 ["the intent element of promissory fraud entails more than proof of an unkept promise or mere failure of performance"].)

The second cause of action for fraud is based in part on Berkeley Hall's failure to perform the promises Van Halen and Rogers alleged were part of their contract with Berkeley Hall. Van Halen and Rogers alleged in their breach of contract cause of action that the "salient terms" of their written agreement with Berkeley Hall that the school breached were that they would pay tuition, Berkeley Hall would refund their tuition if Stella left the school, and the school would ensure a nut-free environment and instruct the

14

teachers and staff how to use the Epi-Pen. These are precisely the statements Van Halen and Rogers alleged were the fraudulent misrepresentations. Indeed, they alleged that the written communications to the parents on December 1, 2009 and February 19, 2010 contained these same contractual promises and misrepresentations. Van Halen and Rogers, however, alleged "something more." They alleged that Berkeley Hall's fraudulent intent was evidenced not merely by its nonperformance of these promises, but by the undisclosed "religious belief of the teachers and staff at Berkeley Hall that Stella's allergies, and the allergies of the other students, were not actually caused by nuts and had no actual physical cause—but were instead ailments to be cured with 'faith healing' and prayer." It was these allegations, not the allegations that Berkeley Hall failed to honor its promises to create a nut-free environment, that showed Berkeley Hall "simply had no intention of enforcing the nut ban" when it promised to do so. Moreover, the *Tenzer v. Superscope* rule for promissory fraud does not apply to fraudulent concealment claims like the one alleged here. Van Halen and Rogers allege that Berkeley Hall concealed not only that "Christian Science doctrine" would prevent the school from implementing the changes it had promised, but also that, if Stella had a reaction to nuts and required medical attention, the school would not provide it. Van Halen and Rogers stated a claim for promissory fraud.

In a related argument Berkeley Hall contends that Van Halen and Rogers' "fraud claim . . . must fail because it is based entirely on their breach of contract claim" and therefore is barred by the economic loss rule, which "limits a plaintiff to contract damages 'unless he can demonstrate harm above and beyond a broken contractual promise.'" "[T]he economic loss rule . . . in some circumstances bars a tort action in the absence of personal injury or physical damage to other property . . . ." (*Robinson Helicopter Co., Inc. v. Dana Corp.*, *supra*, 34 Cal.4th at p. 984.) The rule precludes recovery of economic loss, which the Supreme Court has defined as "'"""damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits[, where there is no] claim of personal injury or damages to other property. . . ."""' [Citation.]' [Citation.]" (*Id.* at p. 988.) The "rule provides: "'"[W]here

15

a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses.'" This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts.' [Citation.] The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise. [Citation.]" (*Ibid*.) "[A] party alleging fraud or deceit in connection with a contract must establish tortious conduct independent of a breach of the contract itself, that is, violation of '"some independent duty arising from tort law."' [Citation.]" (*Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2012) 209 Cal.App.4th 1118, 1130, fn. omitted.)

The economic loss rule does not apply here. Van Halen and Rogers seek more than purely economic damages. They seek noneconomic damages arising from severe emotional distress and worry caused by the Berkeley Hall's alleged placing of their daughter in a life-threatening situation and refusing to treat her in an emergency. (See *Robinson Helicopter Co., Inc. v. Dana Corp.*, *supra*, 34 Cal.4th at p. 988 ["[t]he economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations"].) Because Van Halen and Rogers seek both economic damages and noneconomic damages, the economic loss rule cannot support the trial court's order sustaining the demurrer without leave to amend to the fraud cause of action. (See *Ellena v. Department of Insurance* (2014) 230 Cal.App.4th 198, 217 ["'[a] demurrer does not lie to a portion of a cause of action'"]; *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 119 ["[a] demurrer must dispose of an entire cause of action to be sustained"]; *Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1047 ["a demurrer cannot rightfully be sustained to part of a cause of action or to a particular type of damage or remedy"].)

16

Moreover, the economic loss rule does not apply to a fraudulent inducement claim. (See *Robinson Helicopter Co., Inc. v. Dana Corp.*, *supra*, 34 Cal.4th at p. 990; *Erlich v. Menezes* (1999) 21 Cal.4th 543, 551-552; *Benavides v. State Farm General Ins. Co.* (2006) 136 Cal.App.4th 1241, 1252; *United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp.* (C.D. Cal. 2009) 660 F.Supp.2d 1163, 1188.) Despite Berkeley Hall's assertion to the contrary, Van Halen and Rogers alleged that the misrepresentations induced them to enter into a contract. They alleged that in November 2009, when they met with Miller and Barrows, they "had no intention of re-enrolling Stella at Berkeley Hall if the school had no plans to protect the health of students with nut allergies and [they] would have to begin the arduous process of finding, if possible, an alternate school for Stella to attend the next Fall." They further allege that Berkeley Hall "was well aware" that, due to the timing of applying to private schools, "Stella's decision to re-enroll at Berkeley Hall would likely eliminate the possibility of enrolling in another private school." Van Halen and Rogers allege that nevertheless, in reliance on Berkeley Hall's "repeated assurances that the school had banned nut products," they paid tuition for the following year and gave up the opportunity of enrolling their daughter in another school.

Giving "the complaint a reasonable interpretation" (*Sandler v. Sanchez* (2012) 206 Cal.App.4th 1431, 1436; *Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1470), it is clear that Van Halen and Rogers are referring to the enrollment and tuition agreement, not the agreement alleged in the complaint that included promises of ensuring a nut-free environment and training the teachers in Epi-Pen usage. Although the second amended complaint is not a model of clarity, it is this contract into which Van Halen and Rogers alleged they were fraudulently induced to enter. Any uncertainty on this issue can easily be eliminated with basic written discovery, such as form interrogatory No. 50.1.[7] (See *Lickiss v. Financial Industry Regulatory Authority* (2012)

---

[7] Form interrogatory No. 50.1 requests that, "'[f]or each agreement alleged in the pleadings,'" the responding party "(a) identify each document that was part of the

208 Cal.App.4th 1125, 1135 ["ambiguities can reasonably be clarified under modern rules of discovery"].) At a minimum, the trial court should have given Van Halen and Rogers leave to amend to clarify that the fraudulent misrepresentations induced them to enter into the enrollment and tuition agreement. (See *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100 [when a demurrer has been "'sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse'"]; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 970-971 [trial court abuses its discretion in sustaining a demurrer without leave to amend ""'if there is a reasonable possibility that the defect can be cured by amendment,'"" and "[t]his abuse of discretion is reviewable on appeal 'even in the absence of a request for leave to amend'"].) Van Halen and Rogers stated a fraudulent inducement claim on a "possible legal theory." (*Chavez v. Indymac Mortgage Services*, *supra*, 219 Cal.App.4th at p. 1057.)

Finally, Berkeley Hall argues that Van Halen and Rogers' fraudulent concealment claim fails because it is "directly contradicted by the admissions application agreement that [they] received and signed in April 2007." This document, which Van Halen and Rogers appear to have signed on April 23, 2007 (although Van Halen and Rogers object to its authenticity, is entitled "Statement of Family Agreement" and, according to Berkeley Hall, was part of the application for admission completed by Van Halen and Rogers. The document states: "1. I/We understand that it is the policy of Berkley Hall School that Christian Science is not taught at school as an academic subject or course of instruction. Its broad moral and spiritual values do guide the day to day life of the

agreement; (b) state each part of the agreement not in writing; (c) identify all documents that evidenced any part of the agreement not in writing; (d) identify all documents that were part of any modification to the agreement; (e) state each modification not in writing; and (f) identify all documents that evidenced any modification not in writing. Form interrogatory 50.1 also request[s] that [the responding party] provide the name, address and telephone number of each person who either possessed the documents identified in defendants' response, or who had agreed to any of the oral agreements or oral modifications identified in [the] response." (*Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 397.)

campus. I/We also understand that the faculty, staff, and administration of Berkeley Hall are practicing Christian Scientists. If my/our child enrolls as a Berkeley Hall School student, I/we will encourage his/her participation in school character education activities, including weekly chapel, morning inspirational activities in the classroom, and other periodic activities designed to strengthen the growth of sound moral and spiritual values." The agreement further provides that in the case of a "child's injury or illness the following steps will be taken: [¶] a. If the situation is immediately life threatening, 911 Emergency Assistance will be called for, and a parent . . . will be notified expeditiously. [¶] b. In other situations, First Aid will be administered by a Red Cross Multi-media Course trained faculty or staff member, if required, and the parent . . . will be called for guidance on follow-up actions desired. [¶] All families designate either a health care professional or Christian Science practitioner to be contacted." Berkeley Hall argues that by signing this document Van Halen and Rogers "affirmed in writing that they understood the specific facts they now claim Berkeley Hall failed to disclose."

Berkeley Hall filed a request for judicial notice of the Statement of Family Agreement in the trial court pursuant to Evidence Code section 452 on the ground that "its contents are not subject to reasonable dispute."[8] Van Halen and Rogers opposed the request, arguing that the "document and its interpretation within the context of the defendants' alleged fraud, is subject to dispute, continuing discovery, and the weighing of evidence by msj [*sic*] or at trial." (Italics and underscoring omitted.) The trial court did not rule on the request. Berkeley Hall has filed a request for judicial notice in this court.

This document, assuming it is admissible, may help defeat Van Halen and Rogers' fraudulent concealment claim. But it is not subject to judicial notice under Evidence Code section 452. "Judicial notice under Evidence Code section 452, subdivision (h) is

---

**8** Evidence Code section 452, subdivision (h), provides that the court may take judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."

intended to cover facts which are not reasonably subject to dispute and are easily verified," such as "facts which are widely accepted as established by experts and specialists in the natural, physical, and social sciences which can be verified by reference to treatises, encyclopedias, almanacs and the like or by persons learned in the subject matter," and for facts like "ownership, easements and control over land . . . ." (*Gould v Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1145.) It is not appropriate for contracts and other evidentiary documents that are reasonably subject to dispute. "For a court to take judicial notice of the meaning of a document submitted by a demurring party based on the document alone, without allowing the parties an opportunity to present extrinsic evidence of the meaning of the document, would be improper. A court ruling on a demurrer therefore cannot take judicial notice of the proper interpretation of a document submitted in support of the demurrer. [Citations.] In short, a court cannot by means of judicial notice convert a demurrer into an incomplete evidentiary hearing in which the demurring party can present documentary evidence and the opposing party is bound by what that evidence appears to show." (*Fremont Indemnity Co. v. Fremont General Corp.*, *supra*, 148 Cal.App.4th at pp. 114-115; see *Gould*, *supra*, at p. 1145 ["the existence of a contract between private parties cannot be established by judicial notice under Evidence Code section 452, subdivision (h)"].) The meaning of the agreement attached to the application for admission, and whether it shows Van Halen and Rogers had knowledge of the facts they allege Berkeley Hall concealed, is neither free from reasonable dispute nor "capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (*Gould*, *supra*, at p. 1145.) Neither the trial court nor this court can take judicial notice of it to show what Van Halen and Rogers may have known or not known.

Berkeley Hall argues that the court "can take judicial notice of this application agreement because it was referenced in, but not attached to, [Van Halen and Rogers'] complaints." Van Halen and Rogers' allegations, however, make no mention of their application for admission or the accompanying Statement of Family Agreement. The second amended complaint alleges a written agreement (or agreements) governing tuition

20

payment, tuition refund, a nut-free environment, and Epi-Pen training, but it does not mention or incorporate the application or the Statement of Family Agreement. In *Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, cited by Berkeley Hall, the court found that a settlement agreement "was an appropriate matter of which the court could take judicial notice" because the plaintiff "referred to the Settlement Agreement in its complaint . . . ." (*Id.* at p. 956, fn. 6.) In *Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, also cited by Berkeley Hall, the court took judicial notice of a letter and press release because "the complaint excerpted quotes from the letter and summarized parts of it in some detail" and "the contents of the letter and media release form[ed] the basis of the allegations in the complaint . . . ." (*Id.* at p. 1285, fn. 3.) Here, the complaint does not refer to the application for admission and the application does not form the basis of the complaint.

Finally, even if the application for admission were subject to judicial notice, it would not dispose of Van Halen and Rogers' fraudulent concealment claim. The document states that Berkeley Hall's faculty, staff, and administration are practicing Christian Scientists, and that the school calls 911 in an emergency and otherwise administers first aid by a trained faculty or staff member. It does not state that Berkeley Hall "discouraged the staff from seeking medical intervention for injured or ill students and encouraged a disbelief in the physical causes of allergies . . . ." The document may be evidence, on summary judgment or at trial, that Van Halen and Rogers had actual or constructive knowledge of facts they allege they did not know, but it does not, without evidence of how Van Halen and Rogers understood it and what they discussed with Berkeley Hall representatives about it, defeat Van Halen and Rogers' fraud claim on the pleadings.

D. *The Trial Court Erred in Sustaining Berkeley Hall's Demurrer to the Intentional Infliction of Emotional Distress Cause of Action Without Leave To Amend.*

The trial court sustained Berkeley Hall's demurrer to the remaining five causes of action because the court concluded there was "no harm proximately caused by the defendants['] acts." The trial court's ruling was erroneous because the first amended complaint alleged harm proximately caused by Berkeley Hall's acts: severe emotional distress, loss of $13,000 in non-refunded tuition, and $25,000 in private tutoring costs.[9] Berkeley Hall essentially concedes this was error by asking this court to affirm based on the other arguments it raised in support of its demurrer. Berkeley Hall argues that Van Halen and Rogers did not state a claim for intentional infliction of emotional distress because they did not allege that Berkeley Hall's conduct was outrageous, that Berkeley Hall intended to cause emotional distress, and that they suffered severe emotional distress.

"'The elements of a prima facie case of intentional infliction of emotional distress consist of: (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) suffering of severe or extreme emotional distress by the plaintiff; and (3) the plaintiff's emotional distress is actually and proximately the result of defendant's outrageous conduct.' [Citations.] Extreme and outrageous conduct is conduct that is ""'so extreme as to exceed all bounds of that usually tolerated in a civilized community'"" [citation] and

---

[9] There may be, however, some duplication in the claims for the $13,000 tuition refund and the $25,000 spent on private tutors. Van Halen and Rogers presumably could have used the $13,000 refund to pay for some of the tutoring expenses, so that if they recover the $13,000 from Berkeley Hall, they are made whole with an additional $12,000 (excluding interest calculations regarding both the money the school withheld and the money the parents spent on tutors over time). (See *Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 417 ["the primary purpose of compensatory damages is . . . to make plaintiffs whole"]; *Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1153 ["[t]he purpose of compensatory damages is to make plaintiffs whole for harm caused by defendants"].)

must be "'of a nature which is especially calculated to cause, and does cause, mental distress.'" [Citation.]" (*Chang v. Lederman* (2009) 172 Cal.App.4th 67, 86-87.) "'In order to avoid a demurrer, the plaintiff must allege with "great[] specificity" the acts which he or she believes are so extreme as to exceed all bounds of that usually tolerated in a civilized community. [Citation.]' [Citation.]" (*Yau v. Allen* (2014) 229 Cal.App.4th 144, 160-161.) In addition, "[t]he complaint must plead specific facts that establish severe emotional distress resulting from defendant's conduct." (*Michaelian v. State Comp. Ins. Fund* (1996) 50 Cal.App.4th 1093, 1114.)

Allegations that a school lied to parents about its plans and intentions to eliminate a life-threatening hazard and concealed the continuing existence of a condition that could threaten a child's life do approach the limits of what a civilized society will tolerate. Assuming, as we must on demurrer, the truth of Van Halen and Rogers' allegations that the school placed Stella in a dangerous environment that could have killed her, falsely stated it was addressing the problem and making the environment safer, and then failed to take appropriate steps and commit the resources to be able to respond to a medical emergency in Stella's case if one arose, Van Halen and Rogers satisfied the outrageous conduct requirement. (See *Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377, 407 ["[o]ur greatest responsibility as members of a civilized society is our common goal of safeguarding our children, our chief legacy, so they may grow to their full potential and can, in time, take our places in the community at large"]; *Hulstedt v. City of Scottsdale* (D.Ariz. 2012) 884 F.Supp.2d 972, 1019 [conduct that "impedes medical treatment to an injured child is 'utterly intolerable in a civilized society'"]; *Rodriguez-Sanchez v. Acevedo-Vila* (D.P.R. 2011) 763 F.Supp.2d 294, 303 ["the measure of a civilization is how it treats its weakest members"]; *State ex rel. Gibbs v. Martens* (Fla. 1940) 193 So. 835, 837 ["no feature of our civilization deserves more sincere thought, conscientious effort or enthusiastic support, than the protection of children"].)

Van Halen and Rogers, however, did not sufficiently allege that they suffered severe or extreme emotional distress. The Supreme Court "has set a high bar" for "the requirement that a plaintiff show severe emotional distress," which means "'"'"emotional

23

distress of such substantial quality or enduring quality that no reasonable [person] in [a] civilized society should be expected to endure it.'"" [Citation.]" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1051.) The allegations in the first amended complaint did not come close to alleging such severe emotional distress. As Berkeley Hall correctly points out, Van Halen and Rogers alleged only that they "suffered severe emotional distress worrying about Stella's health." This allegation is insufficient. (See *ibid.* ["plaintiff's assertions that she has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation" insufficient]; *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1377 [allegation that the plaintiff suffered "'severe emotional damage'" and declaration that the defendant's conduct "'was very emotionally upsetting to me, and has caused me to lose sleep, have stomach upset and generalized anxiety'" insufficient].)

Nevertheless, this pleading defect is curable by amendment. (See *AREI II Cases* (2013) 216 Cal.App.4th 1004, 1012 ["[w]hen a demurrer is sustained without leave to amend, we reverse if there is a reasonable possibility an amendment could cure the defect"]; *Otay Land Co. v. Royal Indemnity Co.* (2008) 169 Cal.App.4th 556, 561 ["[i]f a demurrer was sustained without leave to amend, but the defect was curable by amendment, we would find an abuse of discretion in that ruling"].) Van Halen and Rogers' entitlement to leave to amend is particularly strong here, where the trial court was hearing Berkeley Hall's first challenge to the pleading, and the court's ruling did not indicate that their allegations were deficient in any way, other than the (incorrect) statement that they had not alleged damages. (See *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747 ["[i]f the plaintiff has not had an opportunity to amend the complaint in response to the demurrer, leave to amend is liberally allowed as a matter of fairness, unless the complaint shows on its face that it is incapable of amendment"]; *Align Technology, Inc. v. Tran*, *supra*, 179 Cal.App.4th at p. 971 ["'[l]iberality in permitting amendment is the rule, if a fair opportunity to correct any defect has not been given'"]; *Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1227 [trial court abused its discretion in sustaining demurrer to intentional infliction of emotional distress cause of action where "[t]he deficiencies in pleading the nature and extent of [the plaintiff's]

emotional distress appear to be easily corrected" and "the court did not specify any problems with [the plaintiff's] pleadings as to the severity of emotional distress"].)**10**

E.    *The Trial Court Did Not Err in Sustaining the Demurrer to the Negligent Misrepresentation Cause of Action Without Leave To Amend.*

"'The elements of negligent misrepresentation are (1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.' [Citations.]" (*Bock v. Hansen* (2014) 225 Cal.App.4th 215, 231; see *Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1239.) In order to state a claim for negligent misrepresentation, the "'actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions.'" (*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells* (2000) 86 Cal.App.4th 303, 309-310.) A "promise to perform at some future time" does not "involve a past or existing material fact" and therefore will not support a cause of action for negligent misrepresentation. (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158.)**11**

Van Halen and Rogers allege in their negligent misrepresentation cause of action that Berkeley Hall "made a series of negligent misrepresentations to the plaintiffs

---

**10**    As noted, Van Halen and Rogers did allege that Berkeley Hall's "conduct was intended to cause emotional distress or [it] acted with reckless disregard that its conduct would cause emotional distress."

**11**    A false promise to perform in the future may be actionable if made without intent to perform, but it is actionable as promissory fraud, not negligent misrepresentation. (*Tarmann v. State Farm Mut. Auto. Ins. Co.*, *supra*, 2 Cal.App.4th at pp. 158-159.) Promissory fraud is "a type of *intentional* misrepresentation, i.e., actual fraud." (*Id.* at p. 159, fn. omitted.)

25

including that: (1) it would institute a nut-free environment in the areas where Stella was to receive instruction and otherwise frequent; and (2) it would obtain instruction for its staff in the use of the Epi-Pen." These are statements about what Berkeley Hall would do in the future, not statements about past or existing material facts. They may support a promissory fraud or fraudulent representation claim, but they do not support a negligent misrepresentation claim. Because we cannot envision how Van Halen and Rogers can amend to allege misrepresentations about past or existing material facts, and because they have not indicated how they could so amend, the trial court properly sustained Berkeley Hall's demurrer to the negligent misrepresentation cause of action without leave to amend.

F.      *The Trial Court Erred in Sustaining Berkeley Hall's Demurrer to the Negligent Infliction of Emotional Distress Cause of Action Without Leave To Amend.*

"[T]here is no independent tort of negligent infliction of emotional distress. [Citation.] The tort is negligence, a cause of action in which a duty to the plaintiff is an essential element." (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 984; see *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 532 ["[n]egligent infliction of emotional distress is not an independent tort; the tort is negligence"].)

There are two theories of recovery for negligent infliction of emotional distress: bystander and direct victim. (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1071-1072; see *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 205-206.) Bystander cases "'all arise in the context of physical injury or emotional distress caused by the negligent conduct of a defendant with whom the plaintiff had no preexisting relationship, and to whom the defendant had not previously assumed a duty of care beyond that owed to the public in general.'" (*Burgess*, *supra*, at pp. 1072-1073, italics omitted.) The "class of bystanders" who can bring such claims is "circumscribed." (*Id.* at p. 1073.) Bystander duty "is only recognized when the bystander is closely related to the victim, is 'present at the scene of the injury producing event at the time it occurs and

26

is then aware that it is causing injury to the victim,' and suffers emotional distress beyond what would be 'anticipated in a disinterested witness.' [Citation.]" (*Steven F. v. Anaheim Union High School Dist.* (2003) 112 Cal.App.4th 904, 911; see *Gu v. BMW of North America, LLC* (2005) 132 Cal.App.4th 195, 204.)  In contrast, direct victim claims for negligent infliction of emotional distress arise "as a result of a breach of duty owed the plaintiff that is 'assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two.' [Citation.]" (*Burgess*, *supra*, at p. 1073; see *Steven F.*, *supra*, at p. 912 [direct victim cases "involve[] negligence which was 'directed at' the relative as well as the injured party"].)  Van Halen and Rogers are asserting a direct victim claim.

There is no dispute that Berkeley Hall owed a duty to Stella.  "A special relationship is formed between a school district and its students resulting in the imposition of an affirmative duty on the school district to take all reasonable steps to protect its students." (*M. W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508, 517; see *Hemady v. Long Beach Unified School Dist.* (2006) 143 Cal.App.4th 566, 570 ["the California Supreme Court has applied the prudent person standard of care to determine liability of school districts and their employees for injuries to students which occurred during school hours"].)  Parents who enroll their children in school "'may legitimately expect adequate supervision.' [Citation.]" (*J.H. v. Los Angeles Unified School Dist.* (2010) 183 Cal.App.4th 123, 142; see *C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 869 ["'California law has long imposed on school authorities a duty to "supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection"'" and the "'uniform standard to which they are held is that degree of care "which a person of ordinary prudence, charged with [comparable] duties, would exercise under the same circumstances"'"].)  The issue with respect to the negligent infliction of emotional distress claim is whether Berkeley Hall owed a duty to Stella's parents, Van Halen and Rogers.

The duty element for direct victim liability "may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." (*Potter v. Firestone Tire & Rubber Co.*, *supra*, 6 Cal.4th at p. 985; see *Huggins v. Longs Drug Stores California, Inc.* (1993) 6 Cal.4th 124, 129-130; *Ragland v. U.S. Bank National Assn.*, *supra*, 209 Cal.App.4th at p. 205.) Van Halen and Rogers argue that the pre-existing relationship "between the school and the plaintiffs" created a duty of care. Berkeley Hall argues that Van Halen and Rogers did not allege a duty, and that "courts have routinely held that schools do not owe parents a duty not to cause them emotional distress." It is not so clear, however, that courts have so routinely held.

In *Phyllis P. v. Superior Court* (1986) 183 Cal.App.3d 1193 a 13-year-old boy repeatedly sexually molested an eight-year-old girl at school. The school learned of the incidents but decided not to notify the girl's mother, and instead gave the girl psychological counseling and told the boy to stop or the school would notify his parents. (*Id.* at p. 1195.) The mother sued for intentional and negligent infliction of emotional distress and alleged that "[a]s a result of defendants' failure to notify her of these assaults, she has suffered severe emotional distress, both because of the rape and because she has had to observe the 'physiological and psychological deterioration of her daughter from a happy, well adjusted, above average student, to a morose, sullen, despondent and withdrawn, near failing student over a period of thirteen weeks.'" (*Ibid.*) The court held that a "special relationship exist[ed]" between the school and the mother, and that the school "owed a duty of care not only to [the girl], but under the circumstances of this case, to [the] mother as well." (*Id.* at p. 1196.) The court explained that "defendants engaged in a 'cover-up' which they should have foreseen would cause [the mother] more emotional distress than merely informing her of the incidents in the first place. [The mother's] emotional distress was compounded when she learned of the rape, which she felt could have been prevented, and when she thereafter witnessed the physical and emotional deterioration of her child." (*Id.* at p. 1197.) The court held that the mother could state a claim "as a direct victim of defendants' negligent act, or failure to act, and not for injuries based upon her direct observation of the injury to her daughter." (*Ibid.*)

In *Steven F. v. Anaheim Union High School Dist.*, *supra*, 112 Cal.App.4th 904 a high school student had a secret sexual relationship with a teacher that she went "to 'great lengths' to conceal" and about which she told no one. (*Id.* at p. 906.) None of the other teachers or school supervisors knew of the relationship. (*Id.* at p. 907.) The court held that, assuming for purposes of the appeal that the school had negligently supervised the teacher, the student's parents could not recover for negligent infliction of emotional distress because the negligent supervision was not directed at the parents. (*Id.* at pp. 910-911, 912.) The court explained that "[a]ssuming that there was any negligent supervision of the teacher here . . . it was at the most directed at not noticing the rather too-close relationship between the student and the teacher, not directed at the parents." (*Id.* at p. 912.) The court relied on *Martin By and Through Martin v. United States* (9th Cir. 1993) 984 F.2d 1033, where the Ninth Circuit, applying California law, held that parents of a child enrolled in a day care center operated by the federal government who was abducted and raped while lost on an outing could not recover for negligent infliction of emotional distress. (*Id.* at pp. 1036-1037.) The court in *Steven F.* stated that "*Martin*, in fact, would apply a fortiori in this situation because surely there is more of a direct duty to the parent of a six year old who specifically enrolled her in a day care center to keep her from getting lost on an outing than there is to the parents of a teenager in a public high school to prevent a relationship that the teenager herself was trying to hide." (*Steven F.*, *supra*, at p. 912.)

On the issue of duty, this case is more like *Phyllis P.* than *Steven F.* Berkeley Hall assumed a duty to Van Halen and Rogers by promising that the school would take certain actions, including removing nuts and nut products from Stella's educational environment and training school teachers and staff to use the Epi-Pen in the event Stella encountered nuts and had a severe allergic reaction. Like the school in *Phyllis P.*, and unlike the school in *Steven F.*, Berkeley Hall had been warned of the danger. (See *Steven F. v. Anaheim Union High School Dist.*, *supra*, 112 Cal.App.4th at p. 914 [distinguishing *Phyllis P.* because in *Phyllis P.* "there was a warning of the propensity on the part of the 13-year-old student who committed the rape"].) Like the school in *Phyllis P.*, which

knew of the danger the 13-year-old boy posed to the girl, and unlike the school in *Steven F.*, which did not know of the sexual relationship between the teacher and the student, Berkeley Hall knew of the danger that nuts posed to Stella. (See *Steven F.*, *supra*, at p. 914 [distinguishing *Phyllis P.* because in *Phyllis P.* "there was clear knowledge of the danger on the part of the school"].) Like the school in *Phyllis P.*, which withheld information from the parent and "engaged in a 'cover-up,'" (*Phyllis P. v. Superior Court*, *supra*, 183 Cal.App.3d at p. 1197) and unlike the school in *Steven F.*, which could not hide what it did not know, Berkeley Hall concealed that it was in fact continuing to expose Stella to nuts and doing nothing to prepare for an allergenic emergency. (See *Steven F.*, *supra*, at p. 914 [distinguishing *Phyllis P.* because in *Phyllis P.* "there was a conscious decision to preempt the parents from learning of the possibility of danger"].) As in *Phyllis P.*, Berkeley Hall was "*deliberately* usurping the parental prerogative to protect the child." (*Steven F.*, *supra*, at p. 915.) This alleged conduct by Berkeley Hall satisfied the duty element for negligent infliction of emotional distress by assuming a duty to Van Halen and Rogers. (See *Potter v. Firestone Tire & Rubber Co.*, *supra*, 6 Cal.4th at pp. 984-985.)[12]

Nevertheless, "the Supreme Court made it clear that to recover damages for emotional distress on a claim of negligence where there is no accompanying personal, physical injury, the plaintiff must show that the emotional distress was 'serious.'" (*Wong v. Jing*, *supra*, 189 Cal.App.4th at p. 1377; see *Burgess v. Superior Court*, *supra*, 2 Cal.4th at p. 1073, fn. 6 ["requirement that the emotional distress suffered must be 'serious' . . . applies to 'direct victim' cases"].) "'"[S]erious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." [Citation.]'

---

[12]     Berkeley Hall also had a contractual relationship with Van Halen and Rogers, but "the simple existence of a contract" between them is not sufficient to impose a duty of care for negligent infliction of emotional distress. (*Huggins v. Longs Drug Stores California, Inc.*, *supra*, 6 Cal.4th at p. 131; *Moon v. Guardian Postacute Services, Inc.* (2002) 95 Cal.App.4th 1005, 1015.)

[Citation.]" (*Wong*, *supra*, at pp. 1377-1378.) As noted, Van Halen and Rogers have not alleged serious emotional distress, but they are entitled leave to amend to so allege.

G. *The Trial Court Erred in Sustaining Berkeley Hall's Demurrer*
*to the Negligence Cause of Action Without Leave To Amend.*

Van Halen and Rogers' negligence cause of action alleges that Berkeley Hall was negligent because it exposed Stella "to nuts—a known, established and potentially fatal pathogen to a child with Stella's allergy—after both being informed of the allergy and repeatedly promising in writing that it would take steps to avoid exposing Stella to nuts." They again allege that they "suffered severe emotional distress worrying about Stella's health . . . ." As noted, negligent infliction of emotional distress and negligence are the same cause of action with the same elements, with the former a subset of the latter. (*Burgess v. Superior Court*, *supra*, 2 Cal.4th at p. 1072.) It does not appear from the allegations in the first amended complaint that Van Halen and Rogers' negligence cause of action is any different than their negligent infliction of emotional distress cause of action, and that their negligence cause of action is duplicative and unnecessary. (See *Award Metals, Inc. v. Superior Court* (1991) 228 Cal.App.3d 1128, 1135 [demurrer properly sustained to duplicative negligence cause of action where such pleading "adds nothing to the complaint by way of fact or theory"].) Van Halen and Rogers gave no indication in the trial court or in their briefs on appeal that they are alleging a different negligence claim, for example that Berkeley Hall actually but negligently tried to eliminate nuts from Stella's educational environment and to train teachers how to respond to a nut-induced emergency, although counsel for Van Halen and Rogers represented at oral argument that he can amend to state such a claim. Van Halen and Rogers also do not appear to allege a negligence cause of action that is different than their dismissed breach of contract cause of action. (See *Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85, 95 ["'[c]onduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law'"]; *Money Store Investment Corp. v. Southern Cal. Bank* (2002) 98 Cal.App.4th 722, 732 [plaintiff

31

"does not state a negligence cause of action apart from its contract cause of action" based on a defendant's breach of contractual duties, in the absence of a violation of an independent tort duty].) Van Halen and Rogers, however, should have an opportunity, particularly after the first pleadings challenge, to allege a negligence claim that is different than their negligent infliction of emotional distress claim and that is based on a breach of duty other than failure to perform a contractual duty. (See *City of Stockton v. Superior Court*, *supra*, 42 Cal.4th at p. 747 ["leave to amend is properly granted where resolution of the legal issues does not foreclose the possibility that the plaintiff may supply necessary factual allegations"].)

H.  *The Trial Court Erred in Sustaining Berkeley Hall's Demurrer to the Unfair Competition Cause of Action.*

Van Halen and Rogers allege that Berkeley Hall's "failure to disclose to the public in it[s] advertising and promotional material that it is an institution which eschews traditional medical care is an unfair business practice in violation of Business and Professions Code section 17200. [¶] Although during school hours it is *in loco parentis* and charged with ensuring the well-being of the children who attend the school, [Berkeley Hall] has purposefully downplays [*sic*] the fact that it is a Christian Science Institution which rejects medical science and does and will disregard medical intervention to" prospective students and their parents. Van Halen and Rogers allege, citing an attached excerpt from the school's website, that when disseminating information about the school to the general public, "Berkeley Hall claims to be non-sectarian" and "hides its connection with Christian Science, fails to disclose that the school was founded by Christian Scientists and that its teachers, staff and Board of Trustees are comprised solely of Christian Scientists." Van Halen and Rogers further allege, citing an attached excerpt from a Christian Science eNewsletter, that "when advertising for the school in Christian Science publications [Berkeley Hall] discloses that the school is operated at every level by Christian Scientists," and that therefore "children attending the school, who might suffer life threatening injuries while under the school's supervision, are

32

actually under the direct care of Christian Scientists who are likely, based on their religious beliefs, to forgo medical intervention to aid an injured or sick child." Van Halen and Rogers allege this practice arose out of a decision in the late 1990s "to expand the school and its facilities and recruit students outside the Christian Science community," and that as "part of its strategy to expand its student (and revenue) base, the school began to advertise itself to non-Christian Scientists as a secular institution . . . ."

Van Halen and Rogers argue that this practice "is 'unfair,' 'fraudulent,' 'deceptive,' 'untrue' and 'misleading'—satisfying several of the disjunctive prongs of . . . section 17200" of the Business and Professions Code, the unfair competition law (UCL). Berkeley Hall argues that Van Halen and Rogers "failed to allege both that any injury resulting from unfair business practices was substantial or that they suffered an injury that could not have been reasonably avoided."

"The UCL permits civil recovery for 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . .' (Bus. & Prof. Code, § 17200.)" (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 805.) "A claim made under [Business and Professions Code] section 17200 '"is not confined to anticompetitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct. [Citation.] Thus, California courts have consistently interpreted the language of section 17200 broadly."'" (*Wilson v. Hynek* (2012) 207 Cal.App.4th 999, 1007.) "The UCL's 'scope is broad,' and its coverage is '"sweeping."'" (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 783.)

"'Business and Professions Code section 17200 is written in the disjunctive [and] establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.'" (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1133.) "In consumer cases arising under the UCL, a business practice is 'unfair' if (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves." (*Klein v. Chevron U.S.A., Inc.*

33

(2012) 202 Cal.App.4th 1342, 1376, citing *Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1403.)[13]  A practice may be unfair even if it is not unlawful.  (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143; see *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 486.)

"Liberally construed" (*West v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th at p. 806), Van Halen and Rogers' allegations that Berkeley Hall uses two sets of advertising, one of which is deceptive and designed to attract non-Christian Science families to the school who might otherwise not pursue admission, satisfied the "unfair" prong of the UCL.  Although a $13,000 tuition refund claim may not be the largest amount in controversy in a civil case, it is a substantial amount of money, and Van Halen and Rogers do not allege any benefit to consumers or to competition that might outweigh their injury.  (See Stern, Cal. Practice Guide: Business & Professions Code Section 17200 Practice (The Rutter Group 2014 ) ¶ 3:126 ["[t]rivial or speculative harm is insufficient, and must arise to real monetary harm or unwarranted health and safety risks"].)  Van Halen and Rogers also allege that they and other consumers could not have avoided the injury themselves because they did not know the existence of the two kinds of advertising for the school, one allegedly true and the other allegedly false, nor which one was the accurate one.  Moreover, these are not issues that can be resolved at the pleading stage.  (See *Klein v. Chevron U.S.A., Inc.*, *supra*, 202 Cal.App.4th at p. 1376 ["'[w]hether a practice is . . . unfair is generally a question of fact which requires "consideration and weighing of evidence from both sides" and which usually cannot be made on demurrer'"].)

With respect to the fraudulent prong of the UCL, "[a] business practice is 'fraudulent' within the meaning of [Business and Professions Code] section 17200 if it is

---

**13**     Although in consumer cases there is a split of authority on what constitutes an "'unfair'" practice under the UCL, the divisions in this district have "consistently followed the definition enunciated in *Camacho*."  (*Klein v. Chevron U.S.A., Inc.*, *supra*, 202 Cal.App.4th at p. 1376, fn. 14.)

'likely to deceive the public. [Citations.] It may be based on representations to the public which are untrue, and "'also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. . . . A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under'" the UCL. [Citations.] The determination as to whether a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer. [Citation.]' [Citation.]" (*Klein v. Chevron U.S.A., Inc.*, *supra*, 202 Cal.App.4th at pp. 1380-1381; see *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 907 ["[a] 'fraudulent' activity includes any act or practice likely to deceive the public, even if no one is actually deceived"]; *Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 772 ["'[u]nlike common law fraud, a Business and Professions Code section 17200 violation can be shown even without allegations of actual deception, reasonable reliance and damage"].)

The allegations of the first amended complaint satisfied the "fraudulent" prong because Berkeley Hall's alleged conduct is likely to deceive members of the private education consuming public. Van Halen and Rogers alleged that the school's promotional materials, website, and advertisements directed to families "outside the Christian Science community" misrepresent, or at least downplay in a deceptive way, the school's approach to and practice of providing medical care for its students, in a way that is likely to deceive the public. They further allege that Berkeley Hall engaged in this deceptive promotion and advertising in order to help convince non-Christian Science families that the school is a "secular institution" with traditional approaches to student medical care, which, according to Van Halen and Rogers, was untrue. Although Berkeley Hall argues that it truthfully advertises and discloses its history, nature, policies, and procedures, whether in fact a practice is subject to the "fraudulent" prong of the UCL generally is also a question of fact that cannot be decided on demurrer. (See *Klein v. Chevron U.S.A., Inc.*, *supra*, 202 Cal.App.4th at p. 1380.) Because we cannot ""'say as a matter of law that contrary to the complaint's allegations, members of the public were *not* likely to be deceived or misled by"'" Berkeley Hall's alleged conduct (*ibid.*), Van Halen

and Rogers stated a UCL claim under the fraudulent prong.  (See *Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 226-227 ["[t]he question whether consumers are likely to be deceived is a question of fact that can be decided on a demurrer only if the facts alleged in the complaint, and facts judicially noticed, compel the conclusion as a matter of law that consumers are not likely to be deceived"]; Stern, Cal. Practice Guide: Business and Professions Code Section 17200 Practice, *supra*, ¶ 7:167 ["[d]emurrers will rarely defeat an action brought under § 17200," and the "complaint will usually be construed to uphold the action whenever possible"].)

Berkeley Hall argues that Van Halen and Rogers' "own allegations demonstrate they already had knowledge of Berkeley Hall's policy when they decided to re-enroll Stella" because they allege that in the fall of 2009 Berkeley Hall told them its staff "would never administer a dose of adrenaline to Stella even acknowledging that it might be necessary to save her life in response to a severe allergic reaction."  This argument misrepresents the chronology alleged in the complaint.  Van Halen and Rogers alleged that, after and in response to Berkeley Hall's statement to them in the fall of 2009 that the school would not treat Stella in an emergency, the parents "demanded and received a meeting" with the headmaster, who told them (falsely, according to the allegations) that the school would implement changes to ban nut products and train teachers how to use the Epi-Pen.  It was in reliance on these misrepresentations, and Berkeley Hall's "repeated assurances that the school had banned nut products," that they decided to enroll Stella for the next year and pay the $13,000 tuition.

I.      *Stella and the Individual Defendants*

Van Halen and Rogers brought this action individually and on behalf of Stella as her guardians ad litem.  Berkeley Hall correctly argues that Stella is not a proper plaintiff in this action because there are no allegations that she suffered any injuries.  There are no allegations that Stella ever had an allergic reaction to nut products at Berkeley Hall or that she suffered any emotional distress.  Therefore, the trial court properly dismissed her claims.

36

In addition, the first and second amended complaints name as defendants Winifred Needham and Natalie Miller as "employees of Berkeley Hall who are individually liable for their torts committed against the plaintiffs as set forth below." There is nothing, however, "set forth below" about Needham, or any allegation describing who she is or what she did or failed to do. Van Halen and Rogers do identify Miller as "a top administrator of the school" from whom they "demanded and received a meeting." They allege that she attended the November 2009 meeting with Barrows, but they do not allege what it is personally she said, did, or failed to do that would give rise to liability on her part. The trial court properly sustained the demurrers of Needham and Miller without leave to amend and dismissed the case against them.

## DISPOSITION

The order of dismissal is reversed. The trial court is directed to vacate its March 29, 2013 order sustaining Berkeley Hall's demurrer to the third through seventh causes of action of the first amended complaint without leave to amend, and to enter a new order sustaining the demurrer to the third cause of action for intentional infliction of emotional distress with leave to amend, sustaining the demurrer to the fourth cause of action for negligent misrepresentation without leave to amend, sustaining the demurrer to the fifth cause of action for negligent infliction of emotional distress with leave to amend, sustaining the demurrer to the sixth cause of action for negligence with leave to amend, and overruling the demurrer to the seventh cause of action for unfair competition. The trial court is also directed to vacate its July 19, 2013 order sustaining Berkeley Hall's demurrer to the second cause of action of the second amended complaint for fraud without leave to amend, and to enter a new order overruling the demurrer to that cause of action. Finally, the court is directed to enter an order sustaining the demurrers without leave to amend to all claims by Van Halen and Rogers brought on behalf of Stella as her guardians ad litem, and sustaining the demurrers without leave to amend by defendants

37

Needham and Miller to all claims against them.  Van Halen and Rogers are to recover their costs on appeal.  Berkeley Hall's request for judicial notice is denied.


SEGAL, J.*


We concur:


WOODS, Acting P. J.


ZELON, J.

---

\*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.