[No. B152707. Second Dist., Div. Two. Sept. 9, 2002.]

EUGENE GUTKIN, Plaintiff and Appellant, v.
UNIVERSITY OF SOUTHERN CALIFORNIA et al., Defendants and
Respondents.

968

**COUNSEL**

E. Lyn Lemaire for Plaintiff and Appellant.

Paul, Hastings, Janofsky & Walker, J. Al Latham, Jr., and Christina L. McEnerney for Defendants and Respondents.

**OPINION**

**DOI TODD, J.**—Appellant Eugene Gutkin brought a civil action for damages to challenge the revocation of his tenure and termination of his employment as a tenured professor of mathematics at the University of Southern California (the University). He appeals the trial court's orders dismissing individual defendants, sustaining demurrers to five of his seven causes of action without leave to amend, and his own dismissal of the remainder of the complaint. Gutkin also appeals the trial court's orders compelling further responses to discovery and production of documents and for monetary sanctions, denying his ex parte application for modification and postponement of the discovery orders, and denying his motion for leave to amend the complaint. We affirm the judgment. We hold that the trial court properly sustained respondents' demurrers, and did not abuse its discretion in denying leave to amend because Gutkin failed to challenge the University's tenure and grievance procedure by way of administrative mandamus. We further hold that Gutkin is not entitled to appellate review of his voluntary dismissal of the action or the trial court's postdemurrer orders compelling further

production of documents and awarding monetary sanctions against Gutkin, denying his ex parte application, and denying his motion for leave to amend.

I

FACTUAL AND PROCEDURAL BACKGROUND

Gutkin's complaint alleged that he was a tenured professor of mathematics at the University. In the wake of a dispute over the University's requirement that Gutkin teach extra classes to "make up" for classes he had not been able to teach in the fall 1995 semester, the University initiated dismissal proceedings against Gutkin in October 1996. But Gutkin's dismissal hearing was not scheduled to take place until early December 1998, because, according to Gutkin, "[i]t took [the University] longer than anticipated to effectuate the deceptive alterations to the [faculty] [h]andbook" that would govern the "rigged [dismissal] procedures," and the University "dragged its feet." Gutkin further alleged that by December 1998, "[the University] had not finished its tampering, so the deceptively altered [h]andbook was not ready for posting on the Internet by the time of the scheduled hearing. . . . Consequently, [the University] unilaterally postponed the hearing until February 26, 1999."

The dismissal procedure outlined in the faculty handbook required a hearing before a panel of Gutkin's faculty peers. According to Gutkin, the panel selection process set out in the revised faculty handbook constituted a "charade of impartiality" that resulted in a "sham dismissal procedure." In March 1999, the faculty panel issued a recommendation to the president of the University that found that Gutkin had engaged in "serious neglect of duty," a ground for termination in the faculty handbook. The president of the University terminated Gutkin in March 2000 for "serious neglect of duty," as found by the faculty panel.

A. *The complaint.*

Gutkin filed his complaint on January 31, 2001, naming as defendants the University and four individuals: Dr. Joseph Aoun, Dr. Robert Guralnick, Dr. Susan Montgomery, and Dr. Wayne Raskind. The complaint set forth seven causes of action: (1) fraud and deceit; (2) breach of contract; (3) wrongful termination in violation of public policy; (4) age discrimination; (5) defamation; (6) intentional infliction of emotional distress; and (7) intentional interference with prospective economic advantage.

Gutkin asserted all seven causes of action against the University. In addition, he alleged his fifth cause of action for defamation and his seventh

cause of action for intentional interference with contract and prospective economic advantage against Aoun, Montgomery, and Guralnick; his sixth cause of action for intentional infliction of emotional distress against all four individuals; and his seventh cause of action for intentional interference with contract and prospective economic advantage against Aoun, Montgomery, and Guralnick.

B. *The demurrers.*

Respondents demurred, requesting dismissal of the first, second, fifth, sixth, and seventh causes of action in the complaint on the ground that Gutkin's exclusive judicial remedy as to those claims was administrative mandamus under *Pomona College v. Superior Court* (1996) 45 Cal.App.4th 1716 [53 Cal.Rptr.2d 662] (*Pomona College*). Gutkin, they argued, had failed to exhaust his administrative remedies, and all of those claims were barred.

On May 1, 2001 the trial court ruled on the demurrers:

(1) The University's demurrers to the first cause of action for fraud and deceit, the second cause of action for breach of contract, the sixth cause of action for intentional infliction of emotional distress, and the seventh cause of action for intentional interference with prospective economic advantage were sustained without leave to amend.

(2) Raskind's demurrer to the sixth cause of action (the only one asserted against him) was sustained without leave to amend.

(3) The University and Aoun's demurrers to the fifth cause of action for defamation were sustained without leave to amend.

(4) Montgomery and Guralnick's demurrers to the sixth and seventh causes of action were sustained without leave to amend. As to the fifth cause of action for defamation, Montgomery and Guralnick's demurrers were sustained with leave to amend the allegations of the complaint relating to the alleged false and defamatory statements Montgomery and Guralnick made to Gutkin's peers at other universities.

Gutkin filed a writ petition on May 17, 2001, seeking review of the trial court's ruling on the demurrers, which we summarily denied.

Gutkin did not amend his complaint, and the trial court granted respondents' subsequent motion to dismiss all of the individual defendants on June 22, 2001.

Following the trial court's rulings on the demurrers, only two claims remained against the University: Gutkin's cause of action for wrongful termination in violation of public policy and his claim of age discrimination.

### C. *The discovery order.*

On June 20, 2001 the trial court granted respondents' motion to compel further responses to their request for production of documents. The court ordered Gutkin to produce a privilege log and to produce all nonprivileged documents responsive to particular demands in the document request. The court also granted respondents' request for sanctions in the amount of $2,700.[1]

Gutkin did not produce the privilege log as ordered by the trial court. Instead, on July 10, 2001, Gutkin filed an ex parte application seeking to modify the court's June 20, 2001 discovery order and delay further production of documents. The trial court found that Gutkin had failed to show good cause and denied the application. Gutkin then sought leave to amend his complaint to delete the allegations of fraud and deceit so as to render discovery of documents the court had ordered him to produce irrelevant. The trial court denied the motion on August 8, 2001.

### D. *Gutkin's voluntary dismissal.*

On July 12, 2001, Gutkin produced some of the documents the court had ordered produced, but indicated that he was continuing to withhold additional responsive documents, which he did not intend to produce. The University threatened to move for an award of further sanctions, including terminating sanctions.

The University noticed Gutkin's deposition to take place in mid-August. On August 10, 2001, prior to the scheduled date for Gutkin's deposition, Gutkin filed a voluntary request for dismissal of his complaint "without prejudice."

Gutkin filed a notice of appeal on August 17, 2001. He then twice sought entry of judgment of dismissal on the basis of the trial court's orders sustaining the demurrers to five of the seven causes of action and dismissal of the individual defendants, as well as his own voluntary dismissal of the action. The court clerk rejected Gutkin's proposed judgment of dismissal because a dismissal of the complaint had been entered and notice of dismissal given. Gutkin then followed with a "supplemental notice of appeal" on October 4, 2001.

---

[1] Inexplicably, Gutkin's counsel sought writ review of the court's discovery order, not in Gutkin's case, but in the name of another of her clients who had also sued the University—Vicki Pollock—asking that the trial court's discovery order in *Gutkin* be set aside because Pollock's interests were somehow implicated. The writ petition in the *Pollock* case was denied. Gutkin himself did not petition for a writ from the trial court's discovery order or seek a stay of that order.

## II

### CONTENTIONS

With respect to the trial court's sustaining of the demurrers, Gutkin contends that he has a constitutional right to a jury trial of his claims against the University and the individual defendants. He maintains that this court's holding in *Pomona College, supra,* 45 Cal.App.4th 1716, does not apply to the revocation of tenure. Gutkin also contends that the conduct underlying his tort claims falls outside the employment relationship, and these claims should not be subject to administrative mandamus.

Gutkin challenges the trial court's discovery order and sanction award and the denial of his ex parte application to modify the discovery order. He contends that the trial court abused its discretion in ordering further production of documents that were subject to attorney work product protections; the trial court's imposition of sanctions was unjust and failed to recognize the substantial justification for the work product objection; and the trial court abused its discretion in denying Gutkin's ex parte application for modification of the discovery order.

## III

### APPEALABILITY

A. *The ruling on the demurrers.*

■ Gutkin correctly observes that after the trial court sustained respondents' demurrer to five of his seven causes of action without leave to amend, "the plaintiff's power to voluntarily dismiss those five causes of action was terminated." Those counts had been effectively "tried" by the court, and a voluntary dismissal cannot be taken after "trial" commences. (*Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 789 [176 Cal.Rptr. 104, 632 P.2d 217].) Gutkin further contends that even though the trial court refused to enter judgment following his voluntary dismissal of the complaint, the court's order sustaining the demurrers without leave to amend, combined with the dismissal of the action, had the legal effect of a final, appealable judgment. We agree.

In *Ashland Chemical Co. v. Provence* (1982) 129 Cal.App.3d 790 [181 Cal.Rptr. 340], the plaintiff dismissed the complaint with prejudice after the trial court had sustained a defendant's demurrer without leave to amend. The plaintiff expressly dismissed the complaint " 'only for the purpose of expediting appeal,' " to obtain a final judgment to enable it to contest the court's ruling. (*Id.* at p. 792.) On appeal the court rejected the defendant's contention that the plaintiff may not appeal after voluntarily dismissing its complaint, noting, "many courts have allowed appeals by plaintiffs who dismissed their complaints after an adverse ruling by the trial court, on the

theory the dismissals were not really voluntary, but only done to expedite an appeal." (*Id.* at p. 793; see also *Stewart v. Colonial Western Agency, Inc.* (2001) 87 Cal.App.4th 1006, 1012 [105 Cal.Rptr.2d 115]; *Casey v. Overhead Door Corp.* (1999) 74 Cal.App.4th 112, 116, fn. 1 [87 Cal.Rptr.2d 603].)

## B. *The interim orders.*

The effect of Gutkin's voluntary dismissal of the action on the appealability of other interim orders in this case is another matter. It is well established that a voluntary dismissal under Code of Civil Procedure[2] section 581 is not appealable. "The entry [of a request for dismissal] is a ministerial, not a judicial, act, and no appeal lies therefrom." (*Associated Convalescent Enterprises v. Carl Marks & Co., Inc.* (1973) 33 Cal.App.3d 116, 120 [108 Cal.Rptr. 782].) "A wilful dismissal terminates the action for all time and affords the appellate court no jurisdiction to review . . . motions made prior to the dismissal." (*Cook v. Stewart McKee & Co.* (1945) 68 Cal.App.2d 758, 760-761 [157 P.2d 868].) Because Gutkin dismissed his remaining claims in this case *without prejudice,* the voluntary dismissal could not have the legal effect of a final judgment, and could not serve to expedite an appeal. By voluntarily dismissing the action *without prejudice* Gutkin lost his ability to challenge the trial court's interim orders. Accordingly, no appeal lies from the trial court's discovery order and denial of the ex parte application in this case. *Ashland Chemical Co. v. Provence, Stewart v. Colonial Western Agency, Inc.,* and *Casey v. Overhead Door Corp.,* all of which involved voluntary dismissals *with prejudice,* are therefore inapposite.

Gutkin's appeal of the trial court's discovery order, monetary sanction order, and orders denying his ex parte application and motion for leave to amend the complaint, as well as the voluntary dismissal of the action is dismissed.

## IV

### STANDARD OF REVIEW

" 'On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed "if any one of the several grounds of demurrer is well taken. [Citations.]" [Citation.]

---

[2]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]' " (*Payne v. National Collection Systems, Inc.* (2001) 91 Cal.App.4th 1037, 1043 [111 Cal.Rptr.2d 260], quoting *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) Nevertheless, if no liability exists as a matter of law, we must affirm that part of the judgment sustaining the demurrer, and if the plaintiff cannot show an abuse of discretion, the trial court's order sustaining the demurrer without leave to amend must be affirmed. (*Traders Sports, Inc. v. City of San Leandro* (2001) 93 Cal.App.4th 37, 44 [112 Cal.Rptr.2d 677].) "The burden is on the plaintiff . . . to demonstrate the manner in which the complaint might be amended. [Citation.]" (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].)

V

DISCUSSION

A. *Gutkin's claims fail under Pomona College, and the trial court properly sustained respondents' demurrer.*

Our analysis is governed by our decision in *Pomona College*, which is dispositive of all but Gutkin's discrimination claims in this case.

In *Pomona College*, an assistant professor brought a civil action seeking damages for wrongful termination and breach of contract and implied covenants after the college denied him tenure. (*Pomona College, supra,* 45 Cal.App.4th at p. 1720.) The plaintiff claimed that the college had promised him tenure as long as his performance was acceptable, in accordance with the policies outlined in the college's faculty handbook. (*Ibid.*) He alleged that the college had breached his employment agreement by failing to follow its policies and procedures during the tenure review process. (*Ibid.*) We ordered the college's demurrer sustained without leave to amend on the basis of our conclusion that administrative mandamus under section 1094.5[3] provides the exclusive remedy to a professor in a private university for any procedural defects which he believes existed in the tenure review or in the grievance process. (*Pomona College,* at pp. 1720, 1729.)

---

[3]In relevant part, section 1094.5 provides that mandamus is available to review "any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer . . . ."

We concluded that the case law supported application of section 1094.5 to private as well as public universities, and observed: "[C]ourts have been reluctant to review the merits of a tenure decision" because academic "peers, unlike nonacademics, are equipped to evaluate the candidate's teaching and research according to their conformity with methodological principles agreed upon by the entire academic community. They also have the knowledge to meaningfully evaluate the candidate's contributions within his or her particular field of study as well as the relevance of those contributions to the goals of the particular institution." (*Pomona College, supra*, 45 Cal.App.4th at p. 1726, fn. omitted.) For this reason, we concluded that " 'courts must be vigilant not to intrude into that determination, and should not substitute their judgment for that of the college with respect to the qualifications of faculty members for promotion and tenure. Determinations about such matters as teaching ability, research scholarship, and professional stature are subjective, and unless they can be shown to have been used as the mechanism to obscure discrimination, they must be left for evaluation by the professionals, particularly since they often involve inquiry into aspects of arcane scholarship beyond the competence of individual judges.' [Citation.]" (*Id.* at p. 1725.) "[A]bsent discrimination, judicial review of tenure decisions in California is limited to evaluating the fairness of the administrative hearing in an administrative mandamus action." (*Id.* at p. 1726.)

Gutkin attempts to distinguish *Pomona College* on the ground that it involved the decision to deny tenure whereas his case involves the revocation of tenure. But our holding in *Pomona College* applies equally to the revocation of tenure as to the denial of tenure. It goes without saying that the decision of who should have tenure and represent a university is inextricably connected to the "essential freedoms" of a university to " ' "determine for itself on academic grounds who may teach, what may be taught, how it shall be taught, and who may be admitted to study." ' " (*Pomona College, supra*, 45 Cal.App.4th at p. 1726, quoting *Sweezy v. New Hampshire* (1957) 354 U.S. 234, 263 [77 S.Ct. 1203, 1218, 1 L.Ed.2d 1311].) Indeed, Gutkin himself acknowledges the importance of the role of academic peers in making tenure determinations: "A faculty position, held with tenure, . . . [is] the ticket to full membership in the academic community. The decision to promote the scholar to a tenured position is driven, primarily, by the evaluation of the scholar's peers in the field of expertise."

Our holding in *Pomona College* did not turn on whether the plaintiff already held tenure or was challenging the denial of tenure. Nor did we conclude that the plaintiff could not state a contract claim because he lacked tenure. Rather, we held: "California law provides to those who feel wronged by procedural defects in the tenure process—as opposed to those who

disagree with substantive evaluations—a remedy. That remedy is administrative mandamus." (*Pomona College, supra,* 45 Cal.App.4th at p. 1727.) If a college or university has the "essential freedom" to determine for itself "who may teach"—as both this court and the United States Supreme Court have held—that necessarily includes the determination whether a faculty member who has tenure should be dismissed. (*Sweezy v. New Hampshire, supra,* 354 U.S. at p. 263 [77 S.Ct. at p. 1218].)

In his attempt to distinguish *Pomona College,* Gutkin appears to contend that once the initial decision to grant or deny tenure has been made, the judgment of the professor's academic peers falls by the wayside, and a lay jury may then step in to determine whether he or she remains entitled to "full membership in the academic community." But such a determination still requires an assessment of whether the professor's conduct is consistent with or contrary to academic norms, which only academic peers, not lay jurors, are qualified to determine. Gutkin's claim that "academic expertise" was not implicated in the revocation of his tenure is simply wrong: Gutkin refused to teach a class the University required him to teach, thus raising a question of compliance with academic norms.

Throughout his complaint and briefs, Gutkin decries a University dismissal process he calls the "Dismissal Machinery," which he claims is rife with procedural and due process deficiencies. At the heart of his claims lies the assertion that the University "made unilateral and surreptitious changes" to the faculty handbook, which contained the key terms of the tenure employment contract. But Gutkin cannot circumvent administrative mandamus review by seeking redress for alleged procedural and due process deficiencies in the dismissal process. That is precisely the purpose of mandamus review—to ferret out such flaws and rectify them. As we held in *Pomona College,* "[Plaintiff] asserts . . . that 'the procedure set forth in the . . . Handbook regarding the "hearing" is so vague as to deny a grievant due process.' [¶] Section 1094.5, subdivision (b) provides that the scope of inquiry in reviewing a petition for administrative mandate 'shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a *fair trial*; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.' " (*Pomona College, supra,* 45 Cal.App.4th at pp. 1729-1730; § 1094.5, subd. (b).)

Finally, Gutkin concedes that "[a]dministrative mandamus is appropriate where an underlying hearing is required by law," but then contends that the

University's faculty handbook did not satisfy this "by law" requirement. Just as we rejected this argument in *Pomona College*, so we reject it here: "[Plaintiff] also suggests . . . that Pomona was not required 'by law' to hold a hearing. Because the Handbook governed [plaintiff's] employment relationship with Pomona, the college was required by law to provide the hearing described therein. (See *Cubic Corp.* v. *Marty* (1986) 185 Cal.App.3d 438, 454 [229 Cal.Rptr. 828, 66 A.L.R.4th 1115] [an employer is required by law to give its employees the benefit of existing company policies and procedures].) Mandamus is available if a hearing is required by statute, an organization's internal rules and regulations, or due process. [Citations.]" (*Pomona College, supra*, 45 Cal.App.4th at p. 1727, fn. 10.)

In this case, it is undisputed the University's faculty handbook requires a hearing before a tenured faculty member can be dismissed, and further, that Gutkin had such a hearing. It is precisely the faculty handbook's requirement of a hearing that renders the hearing "required by law," for purposes of administrative mandamus. (*Pomona College, supra*, 45 Cal.App.4th at p. 1727.)

B. *The conduct underlying Gutkin's tort claims was strictly confined to the employment relationship; these claims are therefore subject to administrative mandamus.*

 Despite the tort labels, the gravamen of Gutkin's tort claims before us is that the University employed a procedure to dismiss him that was not sanctioned by the 1987 faculty handbook pursuant to which he had been given tenure. The central allegation of the first cause of action for fraud and deceit is that "[the University] represented that it supported the tenure system and the legal rights conferred by the promotion to a tenured position. These representations were false. Behind the scenes, [the University] altered the Faculty Handbook, set [Gutkin] up for termination, and attempted to cover up its wrongful acts with a *rigged dismissal proceeding.*" (Italics added.) Gutkin also describes his fraud claim in his opening brief by reference to the University's dismissal proceedings: "Prof[essor] Gutkin relied upon the University's representations that it supported tenure and would fulfill its obligations under the employment contract. *Even holding the hearing was a manifestation of that [sic] false and misleading representations.*" (Italics added.)

In the fifth cause of action for defamation, Gutkin alleges he was "defamed" by the very fact that he was charged with "serious neglect of duty," by testimony adduced at the hearing, and by being dismissed "on false and fabricated grounds." Gutkin further alleges that the University falsely and

maliciously asserted that there was adequate cause to terminate him from a tenured position on the faculty. Moreover, "[the University] deliberately waited beyond a fair and equitable time to schedule a dismissal hearing in order to assert, improperly, that the procedure set out in the 12/98 Handbook should apply. [The University] knowingly imposed the rigged methods for selecting a diminished panel upon [Gutkin], and falsely represented that the process adhered to national standards of academic due process. [The University] engaged in this wrongful and deceptive conduct in order to represent that [Gutkin's] termination was justified. [The University] knew that this action was false and malicious. [¶] [The University] knowingly and deliberately commenced dismissal proceedings against [Gutkin] without adequate cause. The proceedings were commenced and continued with malice."

Similarly, the causes of action for intentional infliction of emotional distress and intentional interference with contract and with prospective economic advantage are based on the cancellation of a graduate level math class and the order to teach a lower division class, "the commencement of dismissal proceedings," "the delay in commencing those proceedings," the "pursuit of the dismissal proceedings with total disregard of University procedures and principles of fundamental fairness," and simply his "wrongful termination."

Thus, despite the tort labels, the substance of these claims is strictly confined to the employment relationship and the University's dismissal proceedings: precisely the type of claims that administrative mandamus is designed to address. It is manifest that our decision in *Pomona College* finally disposes of Gutkin's four causes of action in tort as well as his contract claim.

We reject Gutkin's contention that his so-called institutional fraud claim is actionable under *Lazar v. Superior Court* (1996) 12 Cal.4th 631 [49 Cal.Rptr.2d 377, 909 P.2d 981]. *Lazar* involved fraudulent inducement to enter into an employment contract (the employer fraudulently induced the plaintiff to move from the East Coast to California)—not a fraudulent inducement "to remain at [the University]" as Gutkin would have it. *Lazar* thus has no application to the facts of this case. As the Supreme Court stated in *Hunter v. Up-Right, Inc.* (1993) 6 Cal.4th 1174, 1184-1185 [26 Cal.Rptr.2d 8, 864 P.2d 88]: "[I]t is difficult to conceive of a wrongful termination case in which a misrepresentation made by the employer to effect termination could ever rise to the level of a separately actionable fraud. In essence, such misrepresentations are merely the means to the end desired by the employer, i.e., termination of employment. They cannot serve as a predicate for tort damages otherwise unavailable under *Foley* [v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373]]."

Finally, the gravamen of Gutkin's defamation claim is that it is inherently defamatory to pursue dismissal of a tenured professor such as himself. This is obviously not the law. In any event, the trial court's order sustaining the demurrer was proper on the ground that the University was privileged under Civil Code section 47, subdivisions (b) and (c) to invoke its dismissal procedures. (*Deaile v. General Telephone Co. of California* (1974) 40 Cal.App.3d 841, 846 [115 Cal.Rptr. 582].) Moreover, despite leave to amend the defamation claim against defendants Montgomery and Guralnick, Gutkin failed to do so, thus admitting he could allege no additional facts to support his claim against these defendants. ■ When a plaintiff elects not to amend after the court sustains a demurrer with leave to amend, we assume the complaint states as strong a case as possible, and we will affirm the judgment if the unamended complaint is objectionable on any ground raised by the demurrer. (*Soliz v. Williams* (1999) 74 Cal.App.4th 577, 585 [88 Cal.Rptr.2d 184].) ■ Since Gutkin's unamended complaint alleged *no* facts to support a defamation claim against Montgomery and Guralnick, the trial court properly sustained the demurrer and dismissed these defendants.

## VI

### DISPOSITION

The judgment is affirmed.[4] Appellant is ordered to bear respondents' costs of appeal.

Nott, Acting P. J., and Ashmann-Gerst, J., concurred.

A petition for a rehearing was denied October 9, 2002, and appellant's petition for review by the Supreme Court was denied December 11, 2002.

---

[4]Appellant's request for judicial notice filed June 12, 2002 is granted as to item 1, the California Supreme Court's denial of the request for publication of the opinion in *Pollock v. University of Southern California* (Oct. 17, 2000, B145203). The request is otherwise denied.

Respondents' request for judicial notice filed May 23, 2002 is granted as to exhibits 1 through 6 with respect to documents in *Pollock v. University of Southern California, supra*, B145203, and *Pollock v. University of Southern California* (Super. Ct. L.A. County, 2000, No. BC250772). The request is otherwise denied.

Respondents' motion for sanctions against appellant and his counsel is denied.