Filed 12/23/15  Plikaytis v. Fairmount, L.P. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ANICE M. PLIKAYTIS, | D066876 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00088045-CU-MC-CTL) |
| FAIRMOUNT, L.P. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Randa Trapp, Judge.  Affirmed.

The McMillan Law Firm and Scott A. McMillan for Plaintiff and Appellant.

Barry Gardner & Kincannon and Jeffrey B. Gardner, Laura J. Petrie for Defendants and Respondents.

Anice M. Plikaytis appeals from a judgment of dismissal entered after the court sustained without leave to amend the separate demurrers of defendants and respondents Fairmount, L.P., dba Talmadge Canyon Park (Fairmount) on the one hand, and that of Yamachu Mengyo, Co. of America Ltd. (Yamachu), Talmadge Management Corporation

(Talmadge), Tass Morita (Morita) and the "Morita Family Trust dated August 20, 1990," (Trust) on the other, as to the first cause of action for breach of fiduciary duty based on constructive fraud; the second cause of action for breach of fiduciary duty based on an asserted conspiracy to transfer funds to Talmadge; and the third cause of action for interference with prospective economic advantage. The court sustained with leave to amend the demurrer brought by Yamachu, Talmadge, Morita and Trust as to the fourth cause of action for breach of fiduciary duty by making a loan, the fifth cause of action for breach of fiduciary duty by failing to hire qualified managers, and the sixth cause of action for breach of fiduciary duty for conspiring to transfer funds.

Plikaytis contends the court erred by sustaining the demurrers because: (1) respondents breached the operating partnership agreement by making a fraudulent loan to her former employer, James Roth, thus respondents "secretly funded Mr. Roth's appeal and siphoned away funds collectable under [Plikaytis's judgment]"; (2) she alleged sufficient facts in the complaint to state a cause of action for breach of fiduciary duty; (3) she pleaded an independent wrong sufficient to state a cause of action for interference with prospective economic advantage; and (4) as regards to her asserted derivative claims of the fourth, fifth and sixth causes of action, she seeks recovery and return of Fairmount assets rather than her individual gain. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On review of a demurrer, we accept as true the well-pleaded facts in the operative complaint. (*Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP* (2014) 59 Cal.4th 568, 571.) We may also consider matters that have been judicially

2

noticed.[1]  (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)

Fairmount operates an apartment complex in San Diego.  In 2008, Plikaytis sued James Roth, RMC, Roth Construction Company (RCC) and Fairmount for, among other causes of action, wrongful termination in violation of public policy.  Plikaytis alleges that a jury awarded her a total of $9,415,367.50, "of which $280,000 was awarded to [her] against Fairmount, RCC, and RMC for breach of an employment contract of an unspecified term.  The verdict also granted [her] a $280,000 award against Fairmount, RCC, and RMC for breach of an employment contract of a specified term."  Defendants appealed that award to this court and we affirmed in part, but reversed the portion of the judgment awarded to Fairmount.

Plikaytis alleges Fairmount improperly loaned Roth $417,000 to fund his appeal of her judgment against him, pointing out that shortly after the judgment, Roth's wife, Debra

---

[1]     Plikaytis attached to her complaint a November 2007 operating agreement titled "first amended & restated agreement of limited partnership of Fairmount, L.P., a California limited partnership."  (Some capitalization omitted.)  The agreement lists Roth Management Corporation (RMC) as the sole general partner.  As relevant here, the limited partners are: Yamachu, who owns 70 percent of the partnership; RMC and Trust, who each own nine percent; and Plikaytis, who owns one percent.

We have taken judicial notice of our nonpublished opinion.  (*Plikaytis v. James Roth et al.* (Oct. 4, 2011, D056922) (*Plikaytis* I).)  We deny respondents' request for judicial notice of an appeals bond that Fairmount posted in *Plikaytis I*.  We also deny Plikaytis's supplemental request for judicial notice of documents filed in Roth and RMC's Chapter 11 bankruptcy proceedings, and that were never presented to the trial court in this case.  The documents are not relevant to our disposition of this appeal.  (See *Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [a court will not take judicial notice of irrelevant evidence].)

Roth, formed Talmadge to replace RMC and RCC; however, Talmadge lacks licenses to operate as a real estate agent or a real estate broker, thus prejudicing Plikaytis's ability to recover a portion of her judgment.

Plikaytis alleges in her first cause of action against Yamachu, Talmadge, Morita and Trust that they breached their fiduciary duty and the partnership agreement by authorizing the loan to Roth "with the specific purpose to thwart [Plikaytis's] collection on her moneys owed from Roth. Despite the clear conflict, Fairmount allowed its lawyers to provide services to Mr. Roth and his related businesses, and did not seek any apportionment of the expenses incurred." She alleges respondents breached the partnership agreement, which "disallowed the use of Fairmount funds for any purpose other than to the direct benefit of Fairmount. The partnership agreement further precludes Fairmount from loaning any monies to any partner." Plikaytis alleges that "[t]he loan did not benefit Fairmount in any way." Plikaytis further alleges: "Mr. Roth was given time to transition his entities from Fairmount's employment and substitute in . . . [Talmadge] to act as the recipient of Fairmount's management funds, which would have otherwise gone to [] Plikaytis's debtors and contributed to the satisfaction of her judgment."

Plikaytis alleges in the second cause of action that Yamachu, Morita and Trust hired Talmadge, which was unlicensed to act as a property manager or building contractor. Plikaytis claims that as a result, "at the Talmadge Canyon Park apartment complex [(the apartments)], vacancies increased and revenues plummeted. Rather than address the falling revenues, the [respondents] endorsed the lost revenue stream as a

4

justification to eliminate the dividend payments" to Plikaytis and the other limited partners. She reiterates that the decision to hire Talmadge "was done to obtain an advantage over [her] by siphoning Fairmount funds away from entities such as RCC and RMC against [which] she had a judgment, to an entity run by Mrs. Roth, thereby effectively continuing to give money to Mr. Roth through Mrs. Roth's corporation, hindering [] Plikaytis' ability to collect on her judgment."

Plikaytis alleges in the third cause of action that Yamachu, Morita and Trust interfered with her prospective economic advantage in light of the fact that "she had a probability of future economic benefit which would result from her judgment against Mr. Roth and his entities which were contracted with and receiving payments from Fairmount." She adds that respondents, "by and through active decisions and passive ratification, injuriously interfered with [her] future economic benefit through the improper $417,000 loan, the transfer of interests from Mr. Roth and his entities to [Talmadge], a Debra Roth affiliate, and the failure to properly manage Fairmount assets by allowing [Plikaytis's] termination and failing to reasonably replace her with a competent employee."

Plikaytis alleges in the fourth cause of action that respondents breached their fiduciary duty because they "agreed to and/or ratified" the loan made to Roth. Plikaytis alleges: "[T]his loan violated the terms of the partnership agreement as it furthered no partnership related purpose. Instead, Defendants and Mr. Roth used Fairmount's assets to its own detriment to gain an advantage over [her] by frustrating her collection efforts on her judgment. Plaintiff is informed and believes the loan will not be paid back in full."

5

Plikaytis alleges in the fifth cause of action for breach of fiduciary duty that respondents "ratified Mr. Roth's decision to terminate [her] for personal reasons, rather than out of a decision made in the best interest of Fairmount.  Plaintiff is informed and believes, and based thereon alleges, that this decision was made with complete disregard to her contribution and value to the partnership in her role as Project Manager."  Plikaytis further alleges respondents "engaged in a form of self-dealing and reckless business practices with respect to the management of Fairmount assets" because they "agreed to and/or ratified" the decisions to hire Roth's son and wife despite their lack of experience. These decisions "resulted in a 40 percent vacancy rate at the Fairmount apartments, causing substantial harm to Fairmount in lost revenue in an amount to be determined at trial."

Plikaytis alleges in the sixth cause of action for breach of fiduciary duty that "[Respondents] decided and/or ratified the decision to hire [Talmadge] after [she] was awarded a judgment against Mr. Roth, RCC, and RMC, entities against which she was a judgment creditor."  She further alleges, "[Respondents] hired [Talmadge] to the detriment of Fairmount as a means to funnel Fairmount funds to Mr. Roth in a manner which would prevent [her] from collecting on her judgment."  Finally, she alleges the decision to hire Talmadge was a breach of the duty of good faith and fair dealing because

6

Talmadge was neither qualified nor legally competent to perform the duties it was paid to do.[2]

As to each cause of action, Plikaytis alleges respondents' "conduct was malicious, fraudulent, and oppressive within the meaning of Civil Code section 3294." She pleads the same damages in each cause of action: "Plaintiff requests that she be awarded compensatory damages, consequential damages, special and incidental damages, in an amount according to proof at trial, but not greater than five million dollars and in a sum no less than $25,000."

*The Demurrers*

Respondents demurred to the complaint on grounds it did not state facts sufficient to constitute the different causes of action.[3] They argued Plikaytis's lawsuit was "made solely as an end run around the bankruptcy protections provided to [Roth] and [RMC], who are reorganized debtors. [She] has a judgment against Roth and RMC, but cannot execute on the judgment against [them], so [she] has now filed this action against the limited partners of Fairmount with the hope of recovering something from *someone* regardless of whether she is legally entitled to do so. [¶] . . . [A]ll of [her claims] fail because limited partners have no fiduciary duty to another limited partner. As to the

---

[2]     Plikaytis alleges two additional causes of action against Talmadge and Doe defendants, but we do not address them because Talmadge is not a party to this appeal.

[3]     We address both demurrers together because the moving parties made similar arguments. Futher, the court applied similar reasoning in ruling on the demurrer filed by Yamachu, Morita and Trust. The court did not rule on Fairmount's demurrers to the fifth and sixth causes of action because the arguments exceeded the page limits imposed by the California Rules of Court.

7

*alleged* derivative claims . . . it is evident that . . . [they are] not derivative harm to the partnership, but her own alleged individual harm, for which she has no standing to sue derivatively."

Respondents alleged the loan to Roth did not breach a fiduciary duty or the partnership agreement, as limited partners do not have a fiduciary duty to other limited partners; the loan was made in compliance with the partnership agreement; and the loan was useful, as shown by Fairmount's successful appeal.  Respondents argued they did not breach their fiduciary duty because the partnership agreement allowed them to hire a different property manager.  Respondents argued Plikaytis could not make out a claim for interference with prospective economic advantage because she had not alleged an independent wrong that Fairmount committed; their lending the money to Roth to prosecute the appeal was protected by the litigation privilege of Civil Code section 47; and, the two-year statute of limitations on this cause of action had run.

As to the three assertedly derivative causes of action, Fairmount argued Plikaytis failed to comply with the requirements of Corporations Code section 15910.04 that she previously make a demand on the partnership to enforce the right, or plead why it is futile to do so.  As to the fourth cause of action for breach of fiduciary duty, respondents argued Plikaytis had not alleged a true derivative action but rather sought an individual benefit.  As to the fifth cause of action, respondents argued they did not have a fiduciary duty to help Plikaytis recover on her judgment; therefore, her allegation failed as a matter of law.  As to the sixth cause of action, respondents argued Plikaytis was seeking her individual damages and not recovery of a judgment for the partnership's benefit.

8

*Court's Ruling on the Demurrers*

The court sustained respondents' demurrers to the first, second and third causes of action without leave to amend "because [Plikaytis] is seeking damages for individual harm to her as a judgment creditor, rather than to her interest as a limited partner. . . . [She] seeks damages for legal expenses to litigate the appeal and claims her ability to collect on her judgment [has] been impeded. Moreover, [she] has not pled a breach of the Partnership Agreement. As pled, the loan was in compliance with the Partnership Agreement, as was the decision of hiring her replacement. . . . Finally, her claim for interference with prospective economic advantage fails because she has not alleged an independent wrong." The court sustained the demurrer as to the assertedly derivative claims with leave to amend because "[Plikaytis] is not seeking to recover for the benefit of Fairmount, but solely for her inability to collect on her judgment."

Plikaytis did not file an amended complaint regarding the derivative causes of action. The court thereafter entered judgment in respondents' favor.

DISCUSSION

I.

*Appellate Review Principles*

We review the allegations of the operative complaint de novo to determine if they allege facts sufficient to state a claim for relief under any legal theory. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors*, *supra*, 48 Cal.4th at p. 42; *Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 156.) " 'In doing so, we treat the

9

demurrer as admitting all material facts properly pleaded. " 'Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " ' " (*Apple Inc. v. Superior Court*, at p. 156.) "[W]e are not required to accept the trial court's legal reasons or conclusions of law; we review its ruling, not its reasoning." (*Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London* (2008) 161 Cal.App.4th 184, 203-204; *Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517 [in an appeal from an order sustaining a demurrer, the appellate court "is not bound by the trial court's construction of the complaint, but must make its own independent interpretation"].)

"If we conclude the complaint fails on any grounds stated in the demurrer, we must then consider whether there is a ' "reasonable possibility" ' the complaint's defect(s) can be cured by an amendment. [Citation.] If it is apparent the complaint's defects can be cured, the trial court has abused its discretion and we will reverse the judgment. [Citation.] Alternatively, if it is apparent the complaint's defects cannot be cured, no abuse of discretion has occurred and we will affirm the judgment. [Citation.] The burden of proving the reasonable possibility of such a curative amendment falls ' " 'squarely on the plaintiff[s].' " ' " (*Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 506-507; see *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) " 'To satisfy that burden on appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." [Citation.] . . . The plaintiff must clearly and specifically set forth the "applicable substantive law" [citation] and the legal basis for amendment, i.e., the

10

elements of the cause of action and authority for it.  Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action.' " (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1491.)

"When a plaintiff elects not to amend after the court sustains a demurrer with leave to amend, we assume the complaint states as strong a case as possible, and we will affirm the judgment if the unamended complaint is objectionable on any ground raised by the demurrer."  (*Gutkin v. University of Southern California* (2002) 101 Cal.App.4th 967, 981.)

II.

*Law Regarding Derivative vs. Individual Claims*

A limited partnership is "an entity distinct from its partners."  (Corp. Code, § 15901.04.)  The " 'test for distinguishing direct from derivative claims in the context of a limited partnership is substantially the same as that used when the underlying entity is a corporation.' "  (*Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 312 (*Schuster*); see also *Everest Investors 8 v. McNeil Partners* (2003) 114 Cal.App.4th 411, 426-429 (*Everest*) [applying *Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106 (*Jones*) and *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 124 (*Nelson*) to an action involving a limited partnership].)  " '[An] action is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets.' " (*Jones*, at p. 106.)  "[A]n individual cause of action exists only if the damages were not

11

*incidental* to an injury to the corporation." (*Nelson,* at p. 124.) "The cause of action is individual, not derivative, only ' "where it appears that the injury resulted from the violation of some special duty owed the stockholder by the wrongdoer and having its origin in circumstances independent of the plaintiff's status as a shareholder." ' " (*Ibid.*) "Thus, where the wrongful acts of a majority shareholder amounted to misfeasance or negligence in managing the corporation's business, causing the business to lose earnings, profits, and opportunities, and causing the stock to be valueless, the court held that the claim was derivative and not individual because the resulting injury was to the corporation and the whole body of its stockholders." (*Everest,* at p. 426.)

" 'The stockholder's individual suit, on the other hand, is a suit to enforce a right against the corporation which the stockholder possesses as an individual.' " (*Jones, supra*, 1 Cal.3d at p. 107.) "The individual wrong necessary to support a suit by a shareholder need not be unique to that plaintiff. The same injury may affect a substantial number of shareholders. If the injury is not incidental to an injury to the corporation, an individual cause of action exists." (*Ibid.*) Shareholders may not bring a direct action for indirect losses, such as decreases in stock value, caused by such harm. (*Bader v. Anderson* (2009) 179 Cal.App.4th 775, 788.) Any other rule "would 'authorize multitudinous litigation and ignore the corporate entity. ' " (*Schuster, supra,* 127 Cal.App.4th at p. 312.) The two actions are mutually exclusive: i.e., the right of action and recovery belongs either to the shareholders (direct action) or to the corporation (derivative action). (*Id.* at p. 312.) "In determining whether an individual action as opposed to a derivative action lies, a court looks at 'the gravamen of the wrong alleged in

12

the pleadings.' " (*Paclink Communications Internat. v. Superior Court* (2001) 90 Cal.App.4th 958, 965.)

## III.

*Analysis of Causes of Action One, Two and Three, Which are Not Direct Claims*

As to the first cause of action, Plikaytis contends that "[Respondents], as her partners and confidants, owed [her] a fiduciary duty of the utmost good faith not to secretly use the assets of Fairmount to her disadvantage as a limited partner. . . . [They] breached this duty, and thereby committed, *inter alia*, constructive fraud, by allowing RMC to overtly breach the Fairmount Operating Agreement in loaning $417,000 to fund Mr. Roth's appeal to [her disadvantage]." Plikaytis further argues: "The only possible effect of [respondents] executing a loan to Mr. Roth was to benefit [him] by frustrating [her] recovery—there was nothing else to be gained by Fairmount by the loan. . . . Further, the only purpose of the transfer in management from RMC and the construction services of RCC was to avoid [her] judgment and divert funds back to Mr. Roth through his wife's company, [Talmadge]." She adds: "While a portion of the funds were also used to fund Fairmount's litigation, that does not negate the fact that the loan was also used to pursue Mr. Roth's individual interests. [¶] The co-mingling of funds and interests necessarily resulted in wasting Fairmount's assets on Mr. Roth's appeal rather than for the sole purpose of advancing Fairmount's interests. Further, not only did the loan constitute a waste of Fairmount funds, as the loan has yet to be repaid, it actively interfered with [her] interests in collecting on her judgment against Mr. Roth." She also alleges the loan was a fraudulent transfer under Civil Code section 3439.04.

13

As a threshold matter, Plikaytis's pleadings and appellate arguments disclose no basis for her to bring causes of action numbers one, two and three on her individual behalf. The gravamen of the wrong Plikaytis alleges against respondents is that they wasted $417,000 of Fairmount's assets by conspiring to fraudulently use partnership monies in the form of a loan made to fund Roth's appeal of her judgment award. So understood, we conclude the action belonged to Fairmount and not to Plikaytis. She reinforces this conclusion with her arguments in her reply brief: "Fairmount L.P. suffered an injury as a result of these hijinks: it was not repaid its $417,000 'loan'. And while managed by Debra Roth's corporation [Talmadge] the vacancy rate at [the apartments] plummeted." She adds: "Fairmount L.P. suffered injury in that it paid for the legal fees that were personal to the Roth defendants, it lost rental income as a result of the poor management of the unlawfully operating [Talmadge], and to the extent that the 'loan' was legitimate and did actually comprise a genuine payment to Roth—albeit illegal—that loss has now matured into a lost asset of the company." It is not dispositive that Plikaytis also alleged that respondents' actions caused her individual injury by causing her to not collect on her judgment. (See *Nelson, supra,* 72 Cal.App.4th at p. 124 ["it is the gravamen of the wrong alleged in the pleadings, not simply the resulting injury, which determines whether an individual action lies"].)

Plikaytis contends she pleaded sufficient facts to state the second cause of action for breach of fiduciary duty based on an asserted conspiracy to transfer funds. However, for the same reason stated above, this claim fails. Plikaytis in her complaint explicitly links her injury to that of the partnership: "[T]he hiring of [Talmadge] was done to

14

obtain an advantage over [her] by siphoning Fairmount funds away from entities such as RCC and RMC against who she had a judgment, to an entity run by Mrs. Roth, thereby effectively continuing to give money to Mr. Roth through Mrs. Roth's corporation, hindering Ms. Plikaytis' ability to collect on her judgment." Plikaytis's alleged injury was incidental to Fairmount's injury, thus she did not properly plead a direct action.

The same analysis also applies to the third cause of action for interference with prospective economic advantage. As alleged in Plikaytis's complaint, respondents interfered with her future economic benefit by making the improper loan to Roth, approving the formation of Talmadge, and failing to "properly manage Fairmount assets by allowing her termination and failing to reasonably replace her with a competent employee." We conclude that as a matter of law, the court did not err in sustaining without leave to amend the respondents' demurrer to these causes of action because here, as in *Nelson*, "the corporation lost earnings, profits, and opportunities"; therefore, "the action must be derivative." (*Nelson, supra,* 72 Cal.App. 4th at p. 127.)

In refuting respondents' arguments, Plikaytis asserts: "[C]ontrary to Defendants' contentions and the trial court's ruling, [her] claims arise from her interests as both a limited partner and judgment creditor." She adds: "Although defendants argued that the damage is solely to [her] as a creditor and not as a limited partner, they ignored that it was only through an unfair use and leveraging of partnership interests that [they] caused the damage." These arguments merely reaffirm that Plikaytis did not meet the standard set forth in Corporations Code section 15910.01, subdivision (b), of pleading "an actual or threatened injury that is not solely the result of an injury suffered or threatened to be

15

suffered by the limited partnership."  Rather, her claims were incidental to injury suffered by the partnership, and thus properly belong to the partnership.

We need not address respondents' other arguments, including whether they breached the partnership agreement.  Further, on appeal Plikaytis does not state what specific amendments would be made or how she would rectify her failure to sufficiently plead direct causes of action against respondents.  Having failed to carry her burden in that regard, we must conclude the court did not err in sustaining the demurrer without leave to amend.  (See *Bergeron v. Boyd* (2014) 223 Cal.App.4th 877, 890.)

IV.

*Causes of Action Four, Five and Six are Not Derivative Claims*

Plikaytis contends as to all of the purported derivative claims that the court "improperly concluded that [she] is not seeking to recover for the benefit of Fairmount, but solely for her inability to collect on her judgment."

She alleges in the fourth cause of action that "unless [her] action can be maintained, [respondents] will retain a gain derived from its [*sic*] willful breach of its fiduciary duty to Fairmount."  Moreover, she alleges that the loan to Roth "violated the terms of the partnership agreement as it furthered no partnership related purpose. Instead, [respondents] and Mr. Roth used Fairmount's assets to its own detriment to gain an advantage over [her] by frustrating her collection efforts on her judgment.  [Plikaytis] is informed and believes the loan will not be paid back in full."  As to this and each of the denominated derivative causes of action, Plikaytis did not seek relief for the partnership's benefit; rather, she sought the following relief for herself:  "Plaintiff requests that she be

16

awarded compensatory damages, consequential damages, special and incidental damages, in an amount according to proof at trial, but not greater than five million dollars and in a sum no less than $25,000."

Although in her appellate brief she avers that she seeks "to recover and return assets to Fairmount," the gravamen of this cause of action as pleaded is the individual injury Plikaytis suffered. Her prayer for relief shows she does not seek to recover for the benefit of the partnership, but rather for the loss she suffered in being unable to collect on her judgment. Therefore, the court did not err in granting respondents' demurrer as to this cause of action. Plikaytis on appeal recognizes that she sought relief solely for her individual harm and now argues: "Despite the request for damages, the derivative claims should not have been construed to seek recovery to [her]. On remand, any such derivative claims will be reframed to address that language in the prayer." However, in light of the fact that Plikaytis did not amend the complaint as to the purported derivative causes of action, we are constrained to determine only whether her complaint state causes of action, not whether she might have been able to do so. (See *Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091.) Because we conclude Plikaytis's complaint fails to state derivative causes of action, we have no basis to remand this matter.

The same analysis applies to Plikaytis's fifth cause of action, in which she seeks only personal benefit, alleging: "[Respondents] ratified Mr. Roth's decisions to terminate [] Plikaytis for personal reasons, rather than out of a decision made in the best interest of Fairmount. [She] is informed and believes, and based thereon alleges that this decision

17

was made with complete disregard to [*sic*] her contribution and value to the partnership in her role as Project Manager."

The same analysis also applies to the sixth cause of action for breach of fiduciary duty based on an asserted conspiracy to transfer funds, in which Plikaytis pleads: "[Respondents] decided and/or ratified the decision to hire [Talmadge] after [she] was awarded a judgment against Mr. Roth, RCC, and RMC, entities against which she was a judgment creditor." She further alleges, "[Respondents] hired [Talmadge] to the detriment of Fairmount as a means to funnel Fairmount funds to Mr. Roth in a manner which would prevent [her] from collecting on her judgment." The gravamen of these three causes of action is individual injury to Plikaytis, who could not recover on her judgment because of respondents' alleged actions. Accordingly, the court did not err in concluding they were not properly pleaded as derivative causes of action.

DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.


O'ROURKE, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.